[Sac. No. 6890.   In Bank.   May 27, 1958.]

EDWARD J. VOLF et al., Respondents, v. THE OCEAN
ACCIDENT AND GUARANTEE CORPORATION,
LTD. (a Corporation), Appellant.

Alexander, Bacon & Mundhenk, William F. Stone, Paul A.
Unsworth, and Honey, Mayall & Hurley for Appellant.

Gordon J. Aulik for Respondents.

TRAYNOR, J.—Plaintiff Edward J. Volf, a general contractor, constructed a stucco house in San Andreas for A. P. Hoover. A stucco exterior finish for a house consists of three coats: a "scratch" coat, which is a mixture of sand, cement and water applied ⅜ inch to ½ inch thick; a "brown" coat, which is a similar mixture of the same thickness; and a "color" or "finish" coat, which is like a paint wash applied with a trowel about ⅛ inch thick. The "scratch" coat went on without incident. The "brown" coat would not stick to the "scratch" coat so Volf returned the mixture to the Neilsen Company for replacement. He mixed the new ingredients in the proper proportions and applied the "brown" coat. The mixture did not meet Volf's expectations but he assumed that it would be all right. After applying the "brown" coat, he applied the finish or "color" coat. Shortly before the building was completed and possession taken by Hoover, cracks appeared in the exterior stucco of the building and Hoover complained. Hoover and Volf then agreed that if the cracks did not get worse Hoover would accept the building and Volf would fill in and paint over the cracks if necessary. When the rain came, the cracks became worse and Hoover called in the State Contracting Board. Tests showed that the stucco was of the right mixture but below compressive strength and that the cracking occurred in the "scratch" and "brown" coats. The board decided in favor of Hoover and Volf put a new stucco exterior over the old at an additional cost to him of $1,309.15.

Defendant had issued to plaintiffs a comprehensive liability insurance policy that contained, among other provisions, the following clause: "COVERAGE D—PROPERTY DAMAGE LIABILITY —EXCEPT AUTOMOBILE. To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident." The policy also contained certain exclusions. The pertinent part of "Exclusion (g)" provided that the policy did not apply under coverage "D" to injury to or destruction of "(3) . . . property in the care, custody or control of the insured, or (4) any goods or products manufactured, sold, handled or distributed . . . by the named insured, or work completed by . . . the named insured, out of which the accident arises. . . ."

Plaintiffs brought this action to recover the cost of the new stucco exterior. The trial court entered judgment for plain-

tiffs, and defendant insurance company appeals. The only issue involved is the coverage afforded by the policy.

■ We agree with defendant that the injury was excluded under "Exclusion (g)" of the policy, even if it is assumed that it was otherwise included under coverage D. Since the defective cement was used and the cracks appeared in the stucco while Volf was constructing the house and before Hoover took possession, the loss was occasioned by "injury to . . . property in the care, custody or control of the insured" and is therefore excluded under Exclusion (g)(3). The injury is also excluded under Exclusion (g)(4), for it was to a product "manufactured, sold, handled or distributed . . . by the named insured" as well as to "work completed by . . . the named insured."

*Hauenstein* v. *Saint Paul-Mercury Indem. Co.*, 242 Minn. 354 [65 N.W.2d 122, 125], and *Heyward* v. *American Casualty Co. of Reading, Pa.*, 129 F.Supp. 4, 8, invoked by plaintiffs, actually support defendant. In the Hauenstein case the plaintiffs were distributors of a certain type of plaster. They were insured by defendant for property damage under a clause similar to coverage D in the instant policy, which was subject to an exclusion identical to the products exclusion in Exclusion (g)(4). The plaintiffs sold the plaster to a contractor who used it on a construction job. After application the plaster shrank and cracked, and the contractor had to remove it and replaster the walls and ceilings. The contractor sought recovery from the plaintiffs for breach of warranty. Plaintiffs then sought a declaratory judgment against the defendant casualty company. They contended that the injury to the plaster itself was not excluded on the grounds that after its application it ceased to be goods or products, and by virtue of the law of accession became a part of the realty. The court rejected this contention, stating: "The law of accession is important in controversies where the distinction between personalty and realty is vital, but it has no justifiable use as a vehicle for importing ambiguity into the language of an insurance contract where none otherwise exists. . . . Clearly the exclusionary clause herein is applicable to plaster as a product handled by plaintiffs without any limitation as to its changed condition by its regular and ordinary use." The court then found that aside from any injury to the plaster itself the building was damaged by its application because the plaster had to be removed so that the walls and ceilings could be replastered. In the instant case, however, the stucco

did not have to be removed and there is no evidence and no finding that the house was injured by reason of the application of the defective stucco.

In holding that an exclusion similar to Exclusion (g) in the instant policy had no application to personal injury the court in *Heyward* v. *American Casualty Co. of Reading, Pa., supra,* stated: "This Exclusion means that the policy will not protect the insured if he has to repair or replace some product or work which proved defective and caused an accident. The Exclusion has no reference to liability for damage to *other property* or *personal injury* arising out of such accident." (129 F.Supp. at p. 8.) In the instant case the plaintiffs seek protection for the very thing that is specifically excluded by Exclusion (g), i.e., the cost to the plaintiffs of replacing the stucco that proved to be defective. So far as Exclusions (g) (3) and (g)(4) are concerned it is immaterial whether or not Hoover became the owner of the stucco.

Plaintiffs contend that the extrinsic evidence supports the interpretation that Exclusion (g) does not preclude recovery of the loss here involved. Mrs. Volf testified that they stated that they wanted "full coverage as far as materials and workmanship" were concerned and made other similar statements. There was no discussion of particular risks. Mrs. Volf also testified that they wanted "the most coverage for as much, what we could afford," and that cost was an item with respect to the purchase of insurance. She further testified that they stated that they wanted full coverage "like Lodato," a competitor, and that defendant's agent showed her Lodato's policy and "we were equally covered." When questioned about the particular loss involved here, i.e., a situation where plaintiffs had done a job and had to replace it, Mrs. Volf testified that there was no reference to such a situation "because we never had the need of it. We didn't think anything like that would come up." There was no discussion of the particular exclusions, but plaintiffs accepted the policy and renewed it the following year without objection. Exclusion (g), especially Exclusion (g)(4) relating to work completed by the named insured, is not reasonably susceptible of the interpretation contended for by plaintiffs, and the extrinsic evidence does not support their position. To read the policy to cover the loss here involved would require that Exclusion (g) be omitted from the policy, but the evidence does not show, nor do plaintiffs claim, that they are entitled to a reformation of the policy omitting Exclusion (g).

The judgment is reversed with directions to the trial court to enter judgment in favor of defendant.

Gibson, C. J., Shenk, J., Schauer, J., Spence, J., and McComb, J., concurred.

CARTER, J.—I dissent.

It is my considered opinion that there is sufficient evidence to support the findings and judgment of the trial court. That court found that the cement used to make the "scratch" and "brown" layers of the stucco application was defective and caused it to disintegrate. It also determined that the oral and documentary evidence offered to interpret the insurance contract implied that the contract covered the loss.

In reversing the judgment of the trial court the majority holds that the damage was within exclusion (g) of the policy for two reasons:

(1) The cracks in the stucco first appeared before Mr. Hoover took possession of the house which was then "property in the care, custody, or control of the insured."

(2) The damage was to a product "manufactured, sold, handled or distributed . . . by the named insured" and "work completed by or for the named insured."

The holding of the majority is highly technical and is not supported by either the facts or law.

Although the stucco was slightly cracked before Mr. Hoover took over the house, he and Volf agreed that the damage was not so serious as to require another stucco application. Only a bit of paint was needed to repair the damage. Only after Mr. Hoover moved into the house did rainfall make the disintegration bad enough to require a new application of stucco. Therefore the damage which made Volf liable for the new application occurred while Mr. Hoover resided in the house. Had the rainfall not caused this additional disintegration, Volf would not have been liable for the cost of a stucco application. According to the majority's interpretation, exclusion (g) encompasses any flaws in a completed building which later becomes so aggravated as to require repair. It would also include damage to other parts of the same building which are affected by the original flaw. This is hardly consistent with the observation of the writer of the majority opinion that ". . . it must not be forgotten that the primary function of insurance is to insure." (*Bollinger* v. *National Fire Ins. Co.*, 25 Cal.2d 399, 405 [154 P.2d 399].)

The majority also relies on exclusion (g)(4) which excludes injury to or destruction of ". . . any goods or products manufactured, sold, handled or distributed or premises alienated by the named insured, or work completed by or for the named insured, *out of which the accident arises*. . . ." (Emphasis added.)

Preliminarily it must be said that the emphasized phrase modifies the entire subsection and not only "or work completed by or for the named insured. . . ." If it were meant to relate only to the latter phrase the comma would properly be omitted.

The trial court found that the accident arose from the cement used in the first stucco application. This exclusion may be construed to avoid liability for the cement itself, although its identity disappeared when it was mixed with other materials to make stucco. The majority has ignored the phrase "out of which the accident arises" which is the key to understanding the holding of the trial court. My disagreement with the majority lies here. I have four reasons for this interpretation:

(1) The clear intent of Volf and defendant's agent was to provide "*full* coverage as far as materials and workmanship" were concerned for a building contractor. Other statements similar in implication to the quoted phrase were made by Volf and his wife in their negotiations with the agent. The latent defects involved in this case are typical construction problems. Volf asked for a form of complete protection and relied on defendant to provide it. It is hardly possible to enumerate the multitude of particular incidents which may arise out of a business so complex as that of a building contractor. What was not discussed by Volf and the agent does *not* imply that those things were not meant to be covered. Volf asked for *full* coverage "like Lodato." This implies that he thought Lodato was "fully covered." The agent showed Volf Lodato's policy and said Volf was "equally covered." Volf's reasonable interpretation of this was that *both* he and Lodato were fully covered. This oral evidence is important in determining the meaning of the language used in the contract.

(2) Under coverage "D" Volf was protected against "Products Hazard." The contract defines this as: ". . . the handling or use of, the existence of any condition in or a warranty of goods or products manufactured, sold, handled or distributed by the named insured, other than equipment rented

to or located for use of others but not sold, if the accident occurs after the insured has relinquished possession thereof to others and away from premises owned, rented or controlled by the insured or on premises for which the classification stated in the company's manual excludes any part of the foregoing. . . .''

Note that this paragraph includes coverage for ''. . . the existence of any condition in . . . goods or products *manufactured, sold, handled* or *distributed* by the named insured. . . .'' The majority cites this language of exclusion D: '' 'manufactured, sold, handled or distributed by the named insured' '' as taking a thing out of the policy. If this is correct, products hazard coverage as defined in the policy is *removed completely* by the very same words in the exception! By giving meaning to the phrase ''out of which the accident occurred'' this anomaly would be avoided. It should not be assumed the company, in bad faith, meant the definition of ''products hazard'' to be meaningless.

(3) The meaning of the phrase ''out of which the accident arises'' is made clearer by the fact that the person buying and using a defective product may recover its value from the seller. In this case Volf can recover the value of the defective cement from the Nielsen Company. This implies that the phrase in question applies only to the cement in this case, not to the other ingredients of the stucco.

(4) ''An insurance policy is to be construed most favorably to the insured, in such manner as to provide full coverage of the indicated risk rather than to narrow the protection. (*Olson* v. *Standard Marine Ins. Co.*, 109 Cal.App.2d 130, 135 [240 P.2d 379] ; *Miller* v. *United Ins. Co.*, 113 Cal.App.2d 493, 497 [248 P.2d 113] ; *Pendell* v. *Westland Life Ins. Co.*, 95 Cal. App.2d 766, 769 [214 P.2d 392] ; *Fageol Truck & Coach Co.* v. *Pacific Indem. Co.*, 18 Cal.2d 748, 751 [117 P.2d 669].) The courts will not sanction a construction of the insurer's language that will defeat the very purpose or object of the insurance. (*Miller* v. *United Ins. Co., supra*, at p. 497; *Narver* v. *California State Life Ins. Co.*, 211 Cal. 176, 180 [294 P. 393, 71 A.L.R. 1374].) . . . Normally a businessman who takes 'comprehensive' insurance with express coverage of 'products property damage' would expect his ordinary transactions to be covered. If the insurer would create an exception to the general import of the principal coverage clauses, the burden rests upon it to phrase that exception in clear and unmistakable language. (*Pendell* v. *Westland Life Ins. Co., supra*, at

p. 770.) If this is not done any ambiguity or uncertainty is resolved in favor of the policyholder. Indeed an exception must be couched in terms which are clear to the ordinary mind (*Pendell* v. *Westland Life Ins. Co., supra,* at p. 770) or any doubts as to the meaning will be resolved against the insurer." (*Ritchie* v. *Anchor Casualty Co.,* 135 Cal.App.2d 245, 257-258 [286 P.2d 1000].) In view of the foregoing rule defendant should not be permitted to exclude the very type of coverage desired by plaintiffs by an exclusionary clause worded ambiguously and not called to their attention.

I think *Hauenstein* v. *Saint Paul-Mercury Indem. Co.,* 242 Minn. 354 [65 N.W.2d 122], supports plaintiff. The court held the plaster sold by the plaintiff was the element causing the damage in that case. The court held that plaintiff could not recover for damage to the plaster itself, but it could recover for damage to the building. It is an inconsequential distinction that the plaster had to be removed in the Hauenstein case but the damaged stucco in this case was merely covered over. The crux is that because of the damage the building's market value decreased. (*Id.,* p. 125.) "No one can reasonably contend that the application of a useless plaster, which has to be removed before the walls can be properly replastered, does not lower the market value of a building. . . ." (*Id.*) The court held a proper measure of damages to be the cost of removing the defective plaster and restoring the building to its former condition. I interpret this to mean restoration with proper plastering.

It can be argued that the Hauenstein case is distinguishable because the building damaged was not built by the insured. A company publication of the National Underwriters Company,* the "F. C. & S. Bulletins," dated August, 1955, entitled "Products Liability Insurance," interprets the exclusion here scrutinized. This publication is written for sellers of insurance. After discussing the Hauenstein case it says:

"A common source of argument—not answered by any decisions at present—is liability arising out of a piece of equipment with *several distinct parts*, all sold or installed by the *same insured at the same time.* Should a defect in one part or a faulty installation of that part damage the balance of the equipment, it is not clear whether the exclusion would deny coverage for damage to the entire piece of equipment or only to the portion causing the damage."

---

*A profit-oriented insurance enterprise.

Thus it is obvious that underwriters themselves are not certain what the paragraph in issue means. The policy to interpret ambiguous clauses in insurance contracts in favor of the insured is clearly invoked.

I conclude that there was sufficient evidence before the trial court to justify its finding that the policy in issue covered this loss.

It will be recalled that the trial court awarded plaintiffs the sum of $1,309.15 together with court costs. Defendant contends that even if it is liable under the policy, it is liable only to the extent of $1,000 under the "each accident" clause. The policy, under the heading "Conditions" sets forth, in paragraph 6, "LIMITS OF LIABILITY, Coverage D. The limit of property damage liability stated in the declarations as 'aggregate operations' is the total limit of the company's liability for all damages arising out of injury to or destruction of property, including the loss of use thereof, caused by the ownership, maintenance or use of premises or operations rated upon a remuneration premium basis or by contractors' equipment rated on a receipts premium basis. . . .

"The limit of property damage liability stated in the declarations as 'aggregate contractual' is the total limit of the company's liability for all damages arising out of injury to or destruction of property, including the loss of use thereof, with respect to each contract.

"These limits apply separately to each project with respect to operations being performed away from premises owned or rented by the named insured."

Paragraph 5 provides "LIMITS OF LIABILITY—PRODUCTS, Coverages B and D. The limits of bodily injury liability and property damage liability stated in the declarations as 'aggregate products' are respectively the total limits of the company's liability for all damages arising out of the products hazard. All such damages arising out of one prepared or acquired lot of goods or products shall be considered as arising out of one accident." "Products Hazard" (3(f)) as defined by the policy is quoted *supra.*

The trial court found that by the terms of the contract of insurance defendant agreed to pay on behalf of plaintiffs all sums which they should become legally obligated to pay because of loss caused to property including the loss of use thereof "by reason of the handling or use of, the existence of any condition in, or a warranty of goods or products manufactured, sold, handled or distributed by the insured plain-

tiffs. . . ." Under the unquestionably ambiguous provisions heretofore quoted, it cannot be said that the finding is unsupported by the record. An insurance policy is to be construed most favorably to the insured, in such a manner as to provide full coverage of the indicated risk rather than to narrow the protection (*Continental Cas. Co.* v. *Phoenix Constr. Co.*, 46 Cal.2d 423, 437-438 [296 P.2d 801, 57 A.L.R.2d 914] ; *Ritchie* v. *Anchor Casualty Co.*, 135 Cal.App.2d 245, 257 [286 P.2d 1000] ; *Glickman* v. *New York Life Ins. Co.*, 16 Cal.2d 626, 634 [107 P.2d 252, 131 A.L.R. 1292]). If the insurer would create an exception to the general import of the principal coverage clauses, the burden rests upon it to phrase that exception in clear and unmistakable language. (*Pendell* v. *Westland Life Ins. Co.*, 95 Cal.App.2d 766, 770 [214 P.2d 392].)

In view of the foregoing it would seem that if, as stated by Mr. Justice Traynor in *Bollinger* v. *National Fire Ins. Co.*, 25 Cal.2d 399, 405 [154 P.2d 399], "that the primary function of insurance is to insure," the judgment here should be affirmed.