S. L. Rowland Construction Co., *Respondent,* v. St.
Paul Fire and Marine Insurance Co., *Appellant.**

*Davies, Pearson, Anderson & Pearson,* by *Vincent Gad-
bow,* for appellant.

*Johnson & Dixon,* by *Brooks K. Johnson,* for respondent.

Donworth, J.—Respondent, a building contractor, who
was engaged in the development of an area near Tacoma
known as "Robin Hood Estates," on June 19, 1961, sold a
completed house located in that area to the Reverend John
G. Kuethe and his wife. October 7, 1962, the house was
substantially damaged by fire. Mr. Kuethe commenced suit
against respondent, alleging in his amended complaint
that wooden floor joists, or headers, had been placed in
contact with, or in close proximity to, the firebox of an
upstairs fireplace in such a manner that they were caused
to ignite when the fireplace was used. Mr. Kuethe sought
damages totaling $19,048.21, which amount included
$13,351.52 depreciation to the house, $159.32 representing
the cost of a tarpaulin he was forced to place over the roof,

*Reported in 434 P.2d 725.

$300 representing damages to his lawn and shrubs caused by fire-fighting equipment, $3,960.50 for damages done to personal property in the house, $677.07 representing the cost to him of moving and storage, and $600 which was the cost of temporary lodging for himself and his family.

Respondent tendered defense of this action to appellant, his insurer. Appellant accepted the defense, but did so under a reservation of right to later deny coverage and liability. On the date set for trial, counsel stipulated orally, in open court, that a settlement had been reached. Judgment was thereafter entered against respondent in the amount of $2,700 for damages to "personal property," and $9,800 for damage to "real property." Appellant paid the $2,700, but refused to pay the balance, contending that the damage to real property was not covered by respondent's policy.

Respondent paid the remaining $9,800 plus accrued judgment interest, and thereafter commenced the present action against appellant, seeking reimbursement of the sum mentioned, less $250 deductible, contending that the loss was covered by and insured under his policy.

The cause was heard by the trial court on February 18, 1966, sitting without a jury. No witnesses were called by either party, and no oral testimony was presented at the trial. The record before this court consists entirely of colloquy between court and counsel, certain exhibits, the transcript, and a "stipulation and supplement to statement of facts."

Following the hearing on the issues, the trial court entered written findings of fact and conclusions of law and judgment for respondent in the amount sought. This appeal followed.

Appellant makes three assignments of error, but essentially they turn on the validity of its argument that the policy involved is unambiguous and that the loss involved is not covered under the policy. We, therefore, turn first to a consideration of the policy.

The insurance policy, issued by appellant, is described on its face as a comprehensive general and automobile policy.

It consists of form DC15409, usually referred to as Declarations, form J15409, which is the printed policy form, and various endorsements which are not material to the questions presented here.

The Declarations form indicates that respondent was insured as a "dwelling contractor." Under item 3 of the Declarations, it is indicated that respondent paid a premium of $1,835.27 for coverage of $100,000 each for "Coverage D,"[1] this limit applying to five specified matters, including "aggregate products."

Aggregate products is further defined on page 6 of the printed contract form, under (4) (b), in the section entitled "Conditions," as follows:

4. Limits of Liability

. . . .
(b) Aggregate Products—Coverages B and D
The limit of bodily injury liability and property damage liability stated in the Declarations as "aggregate products" are respectively the total limits of the Company's *liability for all damages arising out of the products and completed operations hazards as defined in Condition 3.* All damages arising out of (a) one lot of goods or products manufactured, sold, handled or distributed by the Insured or by another trading under his name, or (b) a job or project completed by the Insured shall be considered as arising out of one occurrence or accident. (Italics ours.)

On page 5 of the printed form, under the heading "Conditions," in paragraph 3 (b), it is provided that:

(b) As used in Coverage B and D,
    (1) "products hazard" shall mean the *liability for damages arising out of the handling or use of or the existence of any condition in goods or products manufactured, sold, handled or distributed*

---

[1]Coverage "D" is entitled "Property Damage—Other than Automobile." On page 1 of the printed form, under the heading "Insuring Agreements," Coverage D is defined as follows: "Coverage D—Property Damage Liability Other Than Automobile: To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident."

*by the Named Insured or by others trading under his name, if the accident or occurrence takes place*:

(a) *after possession of such goods or products has been relinquished to others* by the Named Insured or by others trading under his name, and

(b) *away from premises owned, rented or controlled by the Named Insured* or

(c) on premises for which the classification stated in the Company's manual includes any part of the foregoing sub-section (1) (a) or (1) (b),

provided such goods or products shall be deemed to include any container thereof, other than a vehicle, but shall not include any vending machine or any property, other than such container, rented to or located for use of others but not sold.

(2) "completed operations hazard" shall mean the liability for damages caused by the Insured's operations, if the accident or occurrence takes place:

(a) after such operations have been completed or abandoned, and

(b) away from premises owned, rented or controlled by the Named Insured,

provided operations shall not be deemed incomplete because improperly or defectively performed or because further operations may be required pursuant to an agreement; provided further, the following shall not be deemed to be "operations" within the meaning of this paragraph:

(i) pick-up or delivery, except from or onto a railroad car,

(ii) the maintenance of vehicles owned or used by or in behalf of the Named Insured and

(iii) the existence of tools, uninstalled equipment and abandoned or unused materials. (Italics ours.)

Item 4 on the Declarations page is denominated "Optional Exclusions," and provides that:

If an "X" is inserted in the box opposite any one of the optional exclusions then such exclusions as set forth in the policy shall apply to insurance afforded.

Among the four "Optional Exclusions" listed thereafter is "Products and Completed Operations Hazard Exclusion." No "X" is inserted in the box opposite such optional exclusion, and we, therefore, conclude that this exclusion does not apply to the policy, *i.e.* the coverage contemplated thereunder was purchased by respondent, the insured.

On page 4 of the printed form, under the heading "Optional Exclusions," we find:

(1) Products Hazard and Completed Operations Hazard Exclusion.
Under Coverages B and D to the products hazard and completed operations hazard as defined in Condition 3.(b).

Thus, this optional exclusion appears to refer to the precise matters included under "aggregate products," discussed *supra*. The definitions set forth in Condition 3(b) are set forth in connection therewith.

Appellant contends that, notwithstanding the coverage apparently provided by the "aggregate products" and "Products Hazard and Completed Operations Hazard" provisions, exclusion (h)(4) is applicable. Exclusion (h)(4) provides that:

This policy does not apply:

. . . . .

(h) under Coverage D, to injury or destruction of:

. . . . .

(4) any goods, products, or containers thereof manufactured, sold, handled or distributed by the Insured, or work completed by or for the Insured, *out of which the accident arises*, nor to costs of repair or replacement thereof. (Italics ours.)

*Liberty Bldg. Co. v. Royal Indem. Co.*, 177 Cal. App. 2d 583, 587, 2 Cal. Rptr. 329 (1959), cited by appellant in its brief, contains an explanation of such an exclusion:

This Exclusion means that if the insured becomes liable to replace or repair any "goods or products" or "premises

alienated" or "work completed" after the same has caused an accident because of a defective condition, the cost of such replacement or repair is not recoverable under the policy. However, if the accident also caused damage to some *other* property or caused personal injury, the insured's liability for such damage or injury becomes a liability of the insurer under the policy, and is not excluded.

But even if we accept this interpretation (which is contended for by appellant) and hold that, notwithstanding respondent's purchase of "aggregate products" coverage, and "Products Hazard and Completed Operations Hazard" coverage, the exclusion (h) (4) applied, and effectively prevented recovery by respondent in this action for the cost of repair or replacement of the "product," the problem is still not solved, for we are left with the question of how broadly exclusion (h) (4) is to be interpreted. Otherwise stated, the question presented would seem to be: What, specifically, is the "product" of respondent "out of which the accident arises"?

Justice Carter, in his dissent[2] in *Volf v. Ocean Accident & Guarantee Corp.*, 50 Cal. 2d 373, 380, 325 P.2d 987 (1958), states that:

A company publication of the National Underwriters Company, the "F. C. & S. Bulletins," dated August, 1955, entitled "Products Liability Insurance," interprets the exclusion here scrutinized. This publication is written for sellers of insurance. After discussing the Hauenstein case [*Hauenstein v. Saint Paul-Mercury Indem. Co.*, 242 Minn. 354, 65 N. W. 2d 122 (1954)] it says:

"A common source of argument—not answered by any decisions at present—is liability arising out of a piece of equipment with *several distinct parts,* all sold or installed by the *same insured at the same time.* Should a

[2] Although the *Volf* case involved an exclusion provision substantially the same as exclusion (h) (4) in the policy with which we are concerned, and coverage identical to coverage "D" in the present policy, no coverage similar to that contained in the present policy under the "Products Hazard" and "Completed Operations Hazard" provisions is indicated. The "product" involved in the *Volf* case was stucco (applied by the insured builder of the house), which cracked. We do not find the case convincing on the issue presented here.

defect in one part or a faulty installation of that part damage the balance of the equipment, it is not clear whether the exclusion would deny coverage for damage to the entire piece of equipment or only to the portion causing the damage."

Herein lies the ambiguity in the policy now before the court as it applies in the present case. The accident resulted from placement of a joist or header too near the firebox of an upstairs fireplace. The resulting fire damaged or destroyed a substantial portion of the entire house. Was the product, out of which the accident arose, the joist or the fireplace, or does exclusion (h)(4) relate to the entire house?

■ Our determination of this question is governed by the established rule, as stated in *Labberton v. General Cas. Co.*, 53 Wn.2d 180, 182, 332 P.2d 250 (1958):

[T]he law in Washington is settled by a long line of cases recently reaffirmed by *Selective Logging Co. v. General Cas. Co.*, 49 Wn. (2d) 347, 301 P. (2d) 535, that exclusionary clauses are strictly construed against the insurer.

See, also, *Safeco Ins. Co. v. McManemy, ante* p. 211, 432 P.2d 537 (1967).

■ So construing exclusion (h)(4) in the present policy, we hold that it does not apply to the entire house as being the "product" of respondent, but only to the component parts thereof out of which the accident arose. As to such component parts only, exclusion (h)(4) operates to prevent the insured in this action from recovering the costs of replacement and repair.

None of the cases cited by the parties to this action, save one, seeks definitively to answer the question posed above.[3]

---

[3]*E.g. Bundy Tubing Co. v. Royal Indem. Co.*, 298 F.2d 151 (6th Cir. 1962); *Geddes & Smith, Inc. v. Saint Paul Mercury-Indem. Co.*, 51 Cal. 2d 558, 334 P.2d 881 (1959); *Hauenstein v. St. Paul-Mercury Indem. Co.*, 242 Minn. 354, 65 N.W.2d 122 (1954); *Pittsburgh Plate Glass Co. v. Fidelity & Cas. Co.*, 281 F.2d (3d Cir. 1960).

although some may be read to impliedly support our holding.[4]

For the reasons stated herein, we reverse the judgment of the trial court in so far as it allows respondent recovery for the entire house, on the ground that exclusion (h) (4) was inapplicable. We further remand the case in order that the trial court may consider such other evidence as may be presented by the parties and determine the specific "product" or component out of which this accident arose. The cost of replacement of such "product" may not be included in the damages awarded respondent. However, such sums as are not attributable solely to replacement of the component parts out of which this accident arose, and which respondent was compelled to pay, are recoverable, and should be allowed respondent in this suit. Neither party having substantially prevailed in this appeal, neither shall recover costs.

It is so ordered.

FINLEY, C. J., HUNTER and HAMILTON, JJ., concur.

---

[4] One case, *Kendall Plumbing, Inc. v. St. Paul Mercury Ins. Co.*, 189 Kan. 528, 370 P.2d 396 (1962), does seem to involve the same issue, but we find that court's reasoning not persuasive. For example, in *Liberty Bldg. Co. v. Royal Indem. Co., supra,* the court repeatedly emphasized the limitation on the exclusion to products "out of which the accident arises." In that case, the building contractor, who built the entire house, applied stucco, which proved to be defective. The stucco was held to be the "product" to which the exclusion applied.