116 N.J. Super. 88 (1971)
281 A.2d 97
BRYAN CONSTRUCTION CO., INC., PLAINTIFF-APPELLANT,
v.
EMPLOYERS' SURPLUS LINES INSURANCE COMPANY, THE AETNA CASUALTY AND SURETY COMPANY, EMPLOYERS MUTUAL OF WAUSAU, ARTHUR J. O'CONNOR, JAMES J. O'CONNOR AND THOMAS A. LAFFEY, INDIVIDUALLY AND t/a O'CONNOR-LAFFEY & CO., WOHLREICH AND ANDERSON, LTD., COUNTY OF UNION, A BODY POLITIC OF THE STATE OF NEW JERSEY, JOSEPH ALLAN, INGVALD MOE, AND RELIANCE INSURANCE COMPANY (FORMERLY STANDARD ACCIDENT INSURANCE COMPANY), DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued November 30, 1970.
Decided August 26, 1971.
*89 Before Judges CONFORD, KOLOVSKY and CARTON.
Mr. Joseph J. MacDonald argued the cause for appellant (Messrs. Harrison, Hartman & MacDonald, attorneys).
Mr. William J. Cleary, Jr. argued the cause for respondent Aetna Casualty & Surety Company (Messrs. Lamb, Blake, Hutchinson & Dunne, attorneys).
Mr. Gerald W. Conway argued the cause for respondent Employers Mutuals of Wausau (Messrs. Schreiber and Lancaster, attorneys).
Mr. Brian C. Harris argued the cause for respondent Employers' Surplus Lines Insurance Company (Messrs. Braff, Litvak, Ertag & Wortmann, attorneys).
*90 The opinion of the court was delivered by KOLOVSKY, J.A.D.
Plaintiff Bryan Construction Co., Inc. (Bryan) appeals from final judgments entered in favor of defendants Employers' Surplus Lines Insurance Company (Employers'), Aetna Casualty and Insurance Company (Aetna) and Employers Mutual Liability Insurance Company of Wisconsin (impleaded as "Employers Mutuals of Wausau") (Wausau), dismissing the first, third and fourth claims for relief pleaded in the complaint.
As the trial court's opinion notes, 110 N.J. Super. 181, the motions for summary judgment resulting in the judgments appealed from involved only "the issue as to the interpretation of the three policies" issued to plaintiff Bryan by the insurance companies. "Other issues projected in the complaint [were] not involved."
The trial court concluded that the respective policies did not require the insurance companies either to provide Bryan with a defense to the action instituted against it by the County of Union or to indemnify Bryan if the county should recover a judgment against it.
The county's action against Bryan was bottomed on a written agreement dated June 7, 1963 by which Bryan agreed to erect and construct a court house annex, parking garage and juvenile detention center for the sum of $2,612,500. To insure its performance Bryan furnished a bond in that amount with Standard Accident Insurance Company (now Reliance Insurance Company) as surety.
The buildings were erected and the contract price fully paid to Bryan by the end of October 1965. However, in June 1967 the county filed a 13-count complaint in which it charged that the automobile parking garage and juvenile detention center were defectively and improperly constructed. The complaint sought damages from those allegedly responsible for the defects, viz., the county's architect, Joseph Allan, the engineer he hired, Ingvald Moe, the county's general contractor Bryan (the plaintiff herein), as well as *91 from Standard Accident Insurance Company, the surety on Bryan's performance bond.
The three counts seeking damages from Bryan charged that:
(1) Bryan had breached its contract by reason of its failure "to erect and construct said building in accordance with [the] plans and specifications" (10th count);
(2) Bryan "in the construction and erection of said structures, was careless and negligent in that it did not provide sufficient quantity and quality of materials for said structure; that it failed to follow the plans and specifications; that it did not follow accepted standard building practices," and that as a result the building was in an unsafe, uninhabitable and dangerous condition with the walls cracking and the roof falling, requiring the county to expend "great * * * sums of money to correct said faulty workmanship" (11th count), and
(3) the county had relied on Bryan's representation that it was qualified and skilled in the erection of buildings of the nature here involved and "was severely damaged by reason of [Bryan's] willfully erecting a structure which was unsuitable for its intended purpose, and [Bryan] was grossly negligent in erecting and constructing said structure, knowing full well that said structure would not be functional and would create a dangerous and hazardous condition [and that as] a result of [Bryan's] willful and deliberate acts, the plaintiff was caused to expend large sums of money for engineering and architectural surveys to construct and reconstruct the building and to expend other funds in order to protect said building" (12th count).
Except for the punitive damages sought by the 13th count based on the charge that Bryan had committed an intentional and willful tort, each count seeks recovery by the county of the amount required to remedy deficiencies in the buildings allegedly resulting from Bryan's failure to carry out its obligations under the contract for the construction of those buildings.
Plaintiff does not claim that the policies furnish coverage for the pleaded intentional tort. It does not dispute that property damage caused intentionally by or at the direction of the insured is expressly excluded from coverage.
Plaintiff does claim, however, that the policies require the insurance companies to indemnify it for the cost, which the county seeks to recover, of curing the defects in the buildings *92 which it had constructed, even though those defects allegedly are attributable to its own poor workmanship or other fault.
The trial court's ruling to the contrary was based on its determinations that "Exclusion" clauses of the respective policies excluded coverage for the claims asserted against plaintiff by the County of Union  recovery of the amount required to correct the deficiencies in the parking garage and juvenile detention center. We agree with those determinations. Insofar as the Aetna and Wausau policies are concerned, we do so for the reasons set forth in the trial court's opinion reported at 110 N.J. Super. 181.
However, the ruling with respect to the Employers' policy requires additional comment. Under that policy, sometimes referred to as an "umbrella" policy, Employers' Surplus Lines Insurance Company agreed, "subject to the limits of liability, exclusions, conditions and all other terms of [the] policy,"
to indemnify [Bryan] for all sums which [it] shall be obligated to pay by reason of the liability imposed upon [it] by law or liability assumed by [it] under contract or agreement for damages, and expenses, all as included in the definition of "ultimate net loss," because of:
(a) personal injuries, as hereinafter defined;
(b) property damage, as hereinafter defined;
(c) advertising liability, as hereinafter defined.
Terms used in the insuring agreement were defined in the policy:

3. Property Damage.
The term "property damage" shall mean (a) physical injury to, or physical destruction of, tangible property, including the loss of use thereof, but excluding all other consequential damages, or
(b) injury to or destruction of property, including the loss of use thereof, caused by accident.

* * * * * * * *

5. Ultimate Net Loss.
The term "ultimate net loss" shall mean the total sum which the insured, or any company as his insurer, or both, becomes legally obligated to pay as damages because of personal injury, property damage, *93 or advertising liability claims, either through adjudication or compromise, and shall also include [certain specified expenses].
The company shall not be liable for any expenses as aforesaid when payment of such expenses is included in other valid and collectible insurance.
The "limits of liability, exclusions and conditions" to which Employers' insuring agreement was made subject includes a requirement (Condition 15) that the insured maintain in effect the four policies of "Underlying Insurance" set forth in Item 3 of the Declarations of Employers' policy.
The significance of the requirement for maintenance of the policies of "Underlying Insurance" stems from provisions (1) limiting Employers' liability under its policy and (2) excluding particular claims from the coverage which might otherwise be afforded by the insuring agreement.
Under policy Condition 4, Employers' is liable only for "ultimate net loss" in excess of either "the applicable limits of liability of the policies of underlying insurance set forth in Item 3 of the Declarations," or if the occurrence is one not covered by such underlying insurance or is one "covered by such underlying insurance but in recoverable amounts less than the Underlying Limits set forth in Item 4 of the Declarations [$25,000.00], the amount of ultimate net loss set forth in the Declarations as `Underlying Limits.'" "Occurrence," as used in the policy, means
(a) an accident, or (b) an event, or continuous or repeated exposure to conditions, which unexpectedly results in personal injury, property damage, or advertising liability (either alone or in any combination) during the policy period * * *.
Subsequent provisions of Condition 4 provide for additional coverage if the policies of underlying insurance have been reduced or exhausted by reason of losses paid thereunder, and limit Employers' liability in any event to $1,000,000.
We are satisfied, as was the trial court, that the exclusionary clauses of Employers' policy excludes coverage of the claims asserted by the county against Bryan. Hence we *94 need not deal with the question whether, were it not for the exclusions, those claims would be embraced within the insuring agreement.
Insofar as pertinent, the Exclusions of Employers' policy reads as follows:
This policy does not apply:
(a) * * *
(b) * * * to * * * property damage, caused intentionally by or at the direction of the insured.
This policy does not apply, except insofar as coverage is available to the insured under the underlying policies of insurance set forth in the declarations
(c) * * *
(d) * * *
(e) to claims made against the insured:
(i) for repairing or replacing any defective product or products manufactured, sold, handled or distributed by the insured or any defective part or parts thereof nor for the cost of such repair or replacement;
(ii) for the loss of use of any such defective product or products or part or parts thereof;
(iii) for improper or inadequate performance, design or specification, but nothing herein contained shall be construed to exclude claims made against the insured for personal injuries or property damage (other than property damage to a product of the insured) resulting from improper or inadequate performance, design or specification.
We need not decide whether Exclusions (e)(i) and (e)(ii) relating to claims for repairing or replacing defective products "manufactured, sold, handled, or distributed by the insured" applies to a building defectively constructed by the insured. Divergent answers have been given in the reported cases to the question whether buildings are to be deemed "products manufactured, sold, handled or distributed," within the meaning of similar exclusionary clauses. Compare Johnson v. National U.F. Ins. Co. of Pittsburgh, Pa., 56 Misc.2d 983, 289 N.Y.S.2d 852 (Sup. Ct. 1968), with Volf v. Ocean Accident & Guarantee Corp., 50 Cal.2d 373, 325 P.2d 987 (1958); Home Indemnity Co. v. Miller, 399 F.2d 78 (8 Cir.1968), and Vobill Homes, *95 Inc. v. Hartford Accident & Indemn. Co., 179 So.2d 496 (La. Ct. App. 1965).
We are satisfied that, in any event, the claim asserted by the county against Bryan is excluded from coverage by Exclusion (e)(iii). Cf. Vobill Homes, Inc. v. Hartford Accident & Indemn. Co., supra. It is clear from the language of that paragraph that the policy does not apply to claims made against the insured Bryan "for improper or inadequate performance, design or specification" resulting in damage to Bryan's work product, the building it constructed. The plain language of the Exclusion is not rendered ambiguous by the additional language inserted to make it clear that if such improper or inadequate performance, design or specification results in personal injuries or in damage to property other than the insured's own product, then coverage is afforded the insured against the claims for such personal injuries or property damage.
Still to be considered however, is the effect, if any, on Exclusion (e)(iii) of the paragraph preceding Exclusion (c). That paragraph, applicable to Exclusions (c) to (j), inclusive, reads:
This policy does not apply, except insofar as coverage is available to the insured under the underlying policies of insurance set forth in the declarations.
By virtue of the quoted paragraph, Exclusions (c) to (j) are not effective to bar coverage under the Employers' policy in situations where such coverage is afforded to the insured by the underlying policies of insurances set forth in Item 3 of the Declarations in Employers' policy.
We turn, then, to an examination of the policies of underlying insurance to see whether, as plaintiff contends, one or more of them in fact furnish coverage against the county's claim, thus nullifying Exclusion (e) of Employers' policy.
Item 3 of the Declarations of Employers' policy reads as follows:

*96
 Item 3. Underlying Insurance
 Coverage Limits of Liability
 Comprehensive General Liability Personal Injury
 including Products $100,000.00 Each Person
 Liability, Contractual Liability, 300,000.00 Each Occurrence
 Broad Form P.D. and deletion 300,000.00 Aggregate
 of Explosion Collapse and Property Damage
 Underground Damage Coverage $100,000.00 Each Occurrence
 300,000.00 Aggregate
[2] Automobile Liability Bodily Injury
 $100,000.00 Each Person
 300,000.00 Aggregate
 Property Damage
 $100,000.00 Each Accident
[3] Employers Liability $100,000.00 Each Accident
[4- added by endorsement]  All Full Insurance to Value.
 Risk Builders Risk

It is undisputed that the required policies of underlying insurance were maintained in effect during the period the buildings were being constructed. The "Automobile Liability" and "Employers Liability" policies are not relevant to the issue before us; plaintiff does not contend that they furnish coverage against the county's claim.
The "Comprehensive General Liabilty" coverage was furnished in successive years by the Aetna and Wausau policies. We have already ruled, contrary to plaintiff's contention, that they did not afford coverage against the county's claim.
This leaves for consideration only the "All Risk Builders Risk" policy. It was issued by The American Insurance Company (American) in the "Provisional Amount" of $5,000,000; the actual amount of insurance in effect on any date during the course of construction was "that proportion of the provisional amount that the actual value of the described property on that date bears to the value at the date of completion but shall not in any case exceed the provisional amount."
Named as the insured in the American policy was the "Board of Chosen Freeholders, County of Union, New Jersey, Trustee," the policy, however, providing that "Loss, if any, to be adjusted only with the Insured * * * and payable *97 to the Insured and Bryan Construction Co., Inc. * * * [and five other named contractors] as their respective interests may appear, subject nevertheless, to all the provisions and stipulations of the policy."
The policy furnished coverage, subject to various exceptions and exclusions, against direct loss by fire, lightning, windstorm, hail, explosion, riot, riot attending a strike, cviil commotion, aircraft, vehicles and smoke, as well as against "all other risks of direct physical loss."
"Builder's risk" insurance is ordinarily issued to a contractor or a property owner in order to insure him against loss occurring during the construction, repair or alteration of a building.
A builder's risk policy may be issued to cover loss resulting from any cause if the parties so agree, and hence the question whether loss resulting from a certain kind of cause, for example, faulty construction work is covered under a particular policy, depends upon the contract of insurance. Annotation, "Insurance  Builder's Risk," 94 A.L.R.2d 221, 228 (1964);
See also, Annotation, "All Risks Insurance-Coverage," 88 A.L.R. 2d 1122 (1963); Associated Engineers, Inc v. American Nat. Fire Ins. Co., 175 F. Supp. 352 (D. Cal. 1959); Teeples v. Tolson, 207 F. Supp. 212 (D. Or. 1962).
Plaintiff has chosen not to take a position on the question whether American's policy furnishes coverage for the damage encompassed in the county's claim against plaintiff Bryan. In its reply brief, which incorporates a copy of American's policy, it tells us that American "and the insurance advisor for the County, apparently with the County's concurrence, have taken the position that the damage in question is not covered by the Risk policy [and that] plaintiff reserves judgment on the point."
We must therefore assume, for the purpose of the instant case, that American's policy does not furnish such coverage. If it does not, then the exception contained in the above mentioned paragraph preceding Exclusion (c) is of no import. *98 Realistically it would make little difference in the impact on Employers if American's policy did furnish such coverage. While Exclusion (e) would not then benefit Employers, its liability under its policy would be only for that amount, if any, by which the claimed damage exceeds the limits of American's policy, limits which appear to exceed by far the amount of damage claimed by the county.
The judgments in favor of Aetna, Wausau and Employers are affirmed.
CONFORD, P.J.A.D. (concurring in part and dissenting in part).
I am in agreement with the affirmances as to defendants Aetna and Wausau but not as to Employers' (the "umbrella" policy). I agree with the court that the exclusionary clauses in the Aetna and Wausau policies clearly and unambiguously exclude the coverage claimed by plaintiff and that no other argument of plaintiff can legally prevent judgment in favor of those companies. However, the exclusionary clause in the Employers' policy is significantly different. I find it not only not to exclude the present claim but to impliedly reaffirm its coverage. At the very least the clause may raise an ambiguity, which, under well settled principles, must be resolved against the insurer.
Peculiarly apt in relation to the constructional problem presented by the Employers' exclusionary clause is the concise summary of guides to construction of insurance policies set forth in Mazzilli v. Acc. & Cas. Ins. Co. of Winterthur, 35 N.J. 1, 7-8 (1961), restated as authoritative in Ohio Cas. Ins. Co. v. Flanagin, 44 N.J. 504, 513-514 (1965), as follows:
"Solution of a problem of construction of an insurance policy must be approached with a well settled doctrine in mind. If the controlling language will support two meanings, one favorable to the insurer, and the other favorable to the insured, the interpretation sustaining coverage must be applied. Courts are bound to protect the insured to the full extent that any fair interpretation will allow. Kievit v. Loyal Protective Life Ins. Co., etc., 34 N.J. 475 (1961). Moreover, in evaluating the insurer's claim as to the meaning of the language *99 under study, courts necessarily consider whether alternative or more precise language, if used, would have put the matter beyond reasonable question; also whether judicial decisions appear in the reports attributing a more comprehensive significance to it than that contended for by the insurer. Mahon v. American Cas. Co. of Reading, Pennsylvania, 65 N.J. Super. 148 (App. Div. 1961). Insurance contracts are unipartite in character. They are prepared by the company's experts, men learned in the law of insurance who serve its interest in exercising their draftmanship art. The result of their effort is given to the insured in printed form upon the payment of his premium. The circumstances long ago fathered the principle that doubts as to the existence of coverage must be resolved in favor of the insured. Barker v. Iowa Mut. Ins. Co., 241 N.C. 397, 85 S.E.2d 305 (Sup. Ct. 1955).
These general rules of construction have spawned a number of subsidiary ones of equally universal recognition. For example, where the policy provision under examination relates to the inclusion of persons other than the named insured within the protection afforded, a broad and liberal view is taken of the coverage extended. But, if the clause in question is one of exclusion or exception, designed to limit the protection, a strict interpretation is applied. Cal.-Farm Ins. Co. v. Boiseranc [Boisseranc], 151 Cal. App.2d 775, 312 P.2d 401, 405 (D.C. App. 1957)."
Defendant Employers' does not argue that, aside from the effect of the exclusionary clause, it would not be liable under the broad affirmative declarations of coverage in the policy. Nor does the determination of the trial court in its favor appear to have rested on any other basis than that clause. The only issue before us, therefore, is whether the exclusionary clause clearly and unambiguously eliminates coverage of the present claim. I firmly disagree with the conclusion of the majority that it does. Exclusion (e), upon which the defendant relies, reads:
(e) to claims made against the insured:
(i) for repairing or replacing any defective product or products manufactured, sold, handled or distributed by the insured or any defective part or parts thereof nor for the cost of such repair or replacement;
(ii) for the loss of use of any such defective product or products or part or parts thereof;
(iii) for improper or inadequate performance, design or specification, but nothing herein contained shall be construed to exclude claims made against the insured for personal injuries or *100 property damage (other than property damage to a product of the insured) resulting from improper or inadequate performance, design or specification.
Employers' first argues the claim falls within (e)(i) on the basis that the building plaintiff erected for Union County is asserted to be a "defective product * * * manufactured * * * by the insured," and that the county is demanding that plaintiff repair or replace it. A response to this should be coordinated with the examination of the exclusionary argument based on (e)(iii) since the focus of that examination must be the meaning of the word "product" contained within the parenthetical clause thereof. Simple principles of contract construction, founded on common sense, make it evident that the "product" mentioned in (e)(iii) is intended to be of the same nature as the "product or products" mentioned in (e)(i).
It will be useful to summarize my construction of (e)(iii) before discussion of the available case authority relevant thereto.
The generic category, "product or products manufactured, sold, handled or distributed," plainly denominates, in common parlance, tangible portable objects that are commonly transported in the course of commerce from manufacturer to ultimate consumer. The phrase would not connote, in the mind of the ordinary purchaser of a liability insurance policy, a building erected on a fixed site for an owner by the insured as contractor. I think this proposition is beyond fair debate and that only a strained and unnatural construction of the policy language would lead to the contrary conclusion. If accepted, that conclusion eliminates (e)(i) as a basis for exclusion of the instant claim. I pass to (e)(iii).
It can readily be admitted that "improper or inadequate performance, design or specification," if taken alone, aptly encompasses the nature of the default in the claim asserted by the county against the plaintiff. However, the immediately succeeding qualification in (e)(iii), "but nothing herein contained shall be construed to exclude" etc., constitutes *101 an implied affirmative declaration of coverage of claims against the insured for property damage resulting from improper or inadequate performance, design or specification, except only for property damage to a product of the insured. If the property damage from improper or inadequate performance, etc., is not to a product of the insured, within the proper meaning of the word in its context, coverage persists and exclusion is negated. Since the meaning of "product" in (e) (iii) is, for the reasons already stated, the same as that of the "product or products" mentioned in (e)(i), and does not include a building erected on a fixed site, (e)(iii) does not exclude coverage for the instant claim.
There appears to be no case in point on the precise problem in terms of both the nature of coverage asserted and substantial similarity of exclusionary policy language. However, several cases strongly support the thesis that policy language similar to that referring to "products" in the Employers' policy does not refer to service-type operations like building construction or repair as contrasted with manufacture of transportable articles. Hoffman & Klemperer Co. v. Ocean Accident & Guar. Corp., 292 F.2d 324, 328 (7 Cir.1961); New Amsterdam Casualty Co. v. Addison, 169 So.2d 877, 881 (Fla. D. Ct. App. 1964); Johnson v. National U.F. Ins. Co. of Pittsburg, Pa., 56 Misc.2d 983, 289 N.Y.S.2d 852, 858-859 (Sup. Ct. 1968), aff'd o.b. 33 A.D. 2d 924, 309 N.Y.S.2d 110 (App. Div. 1970); Kissel v. Aetna Casualty & Surety Company, 380 S.W.2d 497 (Mo. Ct. App. 1964); Poynter v. Fidelity and Casualty Company of New York, 140 So.2d 42, 45 (Ct. App. La. 1962); cf. McAllister v. Century Indemnity Co. of Hartford, Conn., 24 N.J. Super. 289, 294 (App. Div. 1953), aff'd o.b. 12 N.J. 395 (1953).
Although each of the cited cases involved claims for coverage for liability asserted against the insured for personal injuries or for property damage to property other than that constructed by the insured, they are nevertheless pertinent insofar as construction of "products"-type language in an exclusionary clause is concerned.
*102 The rationale in Justice Meyer's opinion in the Johnson case, supra, is particularly elucidative. The insured there was a residential builder. The reference to "products" in the exclusionary clause was: "goods or products manufactured, sold, handled or distributed by the named insured" (note the close similarity of the "products" verbiage in exclusion (e) of the instant policy.) The court said:
Though houses built constitute part of the gross national "product" and in the broad sense of the word are the "product" of the labor of the various trades engaged in their construction, they are not "products" in common parlance. Rather they are real estate transfers or building construction, while in common parlance the word "products" means manufactured goods, chattels. Pertinent is the following portion of the opinion in Kissel v. Aetna Casualty & Surety Company, supra, 380 S.W.2d 497, at 503:
"It [defendant insurer] says that the idea that a contractor has no `product' is wholly illogical, erroneous and fallacious and the building of the athletic field and the school are the `products' of their builders and that what a contractor leaves behind when his work is finished  his `completed operation'  is his `product'. We do not agree with the defendant's position in attaching such a broad meaning to the term products as used in the insurance policy in question. We do not think it was the intended policy meaning when using the term products and this appears more convincingly so when the policy itself states the nature of the insured's business as `contracting.'"
See also, Peerless Insurance Company v. Clough, supra, 105 N.H. 76, at 81, 193 A.2d 444, at 448; Kendrick v. Mason, supra, 234 La. 271, 294-295, 99 So.2d 108, at p. 116; Nielsen v. Travelers Indemnity Company, supra, 174 F. Supp. 648, at pp. 653-654. Relevant also is the fact that the Restatement covering products liability, is entitled "Liability of Persons Supplying Chattels for the Use of Others." The point is not that a builder-vendor of homes cannot incur a "products hazard" or "products liability," but that the ordinary businessman would not interpret a "products hazard" exclusion as related to such a business. [289 N.Y.S.2d, at 858-859]
In the Hoffman & Klemperer Co. case, supra, where the insured had repaired a building from which a person fell, and the question was whether the hazard was excluded from a contractor's liability policy because comprehended only by a "Products-Completed Operations" coverage, which the insured had not purchased, the court, in holding for the insured, *103 said (292 F.2d, at 328): "Hoffman, as indicated, is a contractor and sells no product."
In a situation parallel to that in Hoffman & Klemperer Co., supra, but involving an insured electrical contractor, the court in New Amsterdam Casualty Co. v. Addison, supra, said:
Pondering these contentions we reflect that the instrument before us is a manufacturers' and contractors' liability policy; appellee is an electrical contractor dispensing services and not a manufacturer of products. The action against him did not involve a claim for negligence in connection with products manufactured or sold by him, but it involved a claim for negligence in performance of services rendered by appellee as an electrical contractor. We are therefore not concerned with one making and selling products but with one who sells services. [169 So.2d, at 881]
It is true that Employers' cites decisions containing language which, superficially considered, might be thought to support the notion that an erected building may be a "product" of the builder, within similar "products" exclusionary language. But all of the exclusionary clauses involved in the cases relied on excluded not only claims for damage to "products," etc. of the insured, but also to "work completed by or for the named insured," or similar language. The latter clause alone would justly vindicate the exclusion as against an insured contractor or serviceman. See Vobill Homes, Inc. v. Hartford Accident & Indem. Co., 179 So.2d 496, 497 (La. Ct. App. 1965); Home Indemnity Co. v. Miller, 399 F.2d 78, 82 (8 Cir.1968); Volf v. Ocean Accident and Guarantee Corporation, 50 Cal.2d 373, 325 P.2d 987, 988 (Sup. Ct. 1958) (this policy also had an effective exclusion as to property in the care, custody and control of the insured). Indeed, both of the policies of the other defendants in the present case, Aetna and Wausau, contain exclusionary language encompassing damage to "work completed by * * * the insured," and this factor is one of the reasons I am voting to affirm the judgments in favor of those *104 defendants. I cannot concur in the majority's use of the term "work-product" in reference to plaintiff's operation as a basis for holding for Employers'. This policy does not mention "work-product." That term was coined in the cases last cited to fit the exclusionary clauses there involved which encompassed, as noted, both "products" and "work" of the insured. This policy does not.
The availability of such plain and unambiguous exclusionary language, commonly used by the insurance industry in contractor's liability policies, which would have accomplished the objective here contended for, is of course another reason why Employers', who did not take advantage thereof or use other clear language for the purpose, should be held strictly to the formulation which it chose to employ in the instant policy. Note the excerpt quoted above from Mazzilli v. Acc. & Cas. Ins. Co. of Winterthur, supra; see also Kook v. American Sur. Co. of N.Y., 88 N.J. Super. 43, 51 (App. Div. 1965).
Employers' brief sets forth, although not clearly, what may be a contention that the instant claim cannot escape exclusion because it does not involve property damage to a "third person" rather than to the county. I see no basis whatever for the distinction thus drawn. Certainly a claim for property damage by such a "third person" would be covered; but there is nothing in the declarations of the policy or the exclusionary clause which would confine coverage for liability for property damage, to damage to property of persons other than the owner, in the instance where the insured contractor has constructed a building but is alleged to have done so negligently to the damage of the owner. If the insurer intended such a limitation, there is nothing in the policy even remotely suggestive thereof; certainly nothing which would "clearly and unequivocally" communicate such an intent to the purchaser of the policy. The policy prima facie encompasses coverage for liability for property damage sustained by anyone who makes a claim therefor against the insured.
*105 I would reverse the summary judgment entered in favor of Employers' and direct entry of summary judgment as to liability for coverage in favor of plaintiff as to that defendant.