[Civ. No. 35875. Second Dist., Div. One. Nov. 4, 1970.]

OWENS PACIFIC MARINE, INC., Plaintiff and Respondent, v.
INSURANCE COMPANY OF NORTH AMERICA,
Defendant and Appellant;
HOME INSURANCE COMPANY, Defendant and Respondent.

## Counsel

Haight, Lyon & Smith, Charles B. Smith and Henry F. Walker for Defendant and Appellant.

Orville L. Marlett for Plaintiff and Respondent.

Dryden, Harrington & Swartz, Raphael Cotkin and Ellis J. Horvitz for Defendant and Respondent.

## Opinion

GUSTAFSON, J.—Plaintiff Owens Pacific Marine, Inc. (hereinafter referred to as the insured), was engaged in the business of selling and repairing boats, principally pleasure boats. When a purchaser contracted to buy a boat, the insured would spend anywhere from the next one to four weeks readying the boat for delivery to the purchaser. Often this procedure would include alterations or additions to the boat to satisfy the requirements of the particular purchaser.

On April 26, 1965, Robert Millspaugh contracted to purchase from the insured a new boat which he named the "Silver Dollar." The boat did not contain a hot water heater and Mr. Millspaugh requested that one be installed. The insured did so between April 27, 1965, and May 6, 1965, the installation requiring alterations to the interior of the boat to accommodate the electric hot water heater. On May 7, 1965, the boat was delivered to

the purchaser and about one week later the boat was completely destroyed from the explosion of the electric hot water heater. Millspaugh sued the insured and recovered judgment. The insured incurred costs of $2,857.72 in defending the suit and suffered a loss of $15,922.11 in the payment of damages to Millspaugh for the value of the boat (but not including the value of the hot water heater). The record does not disclose the legal basis on which the insured was held liable to Millspaugh.

At the time of the loss of the boat and since January 1, 1965, the insured held a "Comprehensive Multiple Liability Policy" issued by defendant Insurance Company of North America (hereinafter INA) and a "Ship Repairers Liability Policy" issued by defendant Home Insurance Company (hereinafter Home). The policies were purchased by the insured as a result of efforts by insurance brokers George Dicks and Mackay & Dicks who in December 1964 analyzed the insured's then existing insurance program, recommended that existing insurance be terminated and recommended that the above mentioned policies be purchased from defendants INA and Home (for whom the brokers were agents).

When the insured was sued by Millspaugh, INA and Home disclaimed liability and refused to defend the lawsuit. The insured provided its own defense and after judgment against it brought this lawsuit for declaratory relief to determine whether INA or Home or both were liable to the insured and if not whether the insurance brokers should be liable to the insured because of their representations concerning the extent of coverage. The judgment below was that the policies of both INA and Home covered the loss, but that Home had no obligation to the insured except for any loss in excess of the amount of insurance provided by INA, and that the insurance brokers are not liable to the insured because there is coverage. Defendant INA appeals.

### Scope of the Exclusion Clause

The policy of INA undertook "To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident." INA also undertook to defend any suit against the insured seeking to impose liability for which the policy afforded coverage. INA does not assert that liability for the destruction of the "Silver Dollar" and for expenses incurred in defending the lawsuit brought by Millspaugh are not, except for the exclusion clause, covered by the insurance policy.

Although the INA policy contains many exclusions, only one exclusion clause is pertinent to this case. In the printed policy it is the clause which

makes the policy inapplicable under the property damage coverage quoted above "to injury to or destruction of . . . any goods [or] products . . . sold, handled or distributed . . . by the named insured, or work completed by or for the named insured, out of which the accident arises." The insurance brokers, the trial court found, were informed by the insured of its concern that the proposed INA and Home policies would cover "the hazard of a loss to a vessel sold by the insured, from a cause arising in the insured's work or addition of equipment in the preparation of the vessel for sale or delivery. . . . It was the intention of the [insured] that such hazard be insured; such intention was communicated to [INA and Home]." One of the brokers, who was also an agent for INA, testified that by typewritten endorsement to the policy the printed exclusion clause was deleted and a typewritten exclusion clause was substituted therefor as "part of broadening this contract to take care of this problem."

The typewritten endorsement is entitled "BROAD FORM PROPERTY DAMAGE COVERAGE." But with respect to the only problem with which the insured was concerned and the only exclusion clause here pertinent, the typewritten endorsement made the property damage coverage inapplicable "to injury to or destruction of any goods [or] products . . . sold, handled or distributed . . . by the named insured, or work completed by or for the named insured, out of which the occurrence arises." Except for the substitution of the word "occurrence" for the word "accident," which has no significance (Farbstein and Stillman, *Insurance for the Commission of Intentional Torts* (1969) 20 Hastings L.J. 1219), the exclusion clause in the typewritten form is identical to the exclusion clause in the printed policy. Despite the fact that there was no "broadening" of the coverage by the typewritten endorsement, the insured did not seek to reform the policy or to estop INA from invoking the exclusion clause on the ground that the insured relied upon the policy delivered by INA as being one which would cover the insured for the type of liability incurred to Millspaugh—a liability which INA knew that the insured intended be covered. Instead, we are faced, as was the trial court, with the questions of whether the exclusion clause is susceptible of the construction contended for by the insured and, if so, whether both the insured and INA intended that construction.

■  It is the contention of INA that the "Silver Dollar" was the product "sold, handled or distributed" by the insured. Thus INA argues that the "Silver Dollar" was excluded from property damage coverage. Unquestionably this is one construction of the exclusion clause. INA claims that it is the *only* construction of which the clause is susceptible. The insured, on the other hand, claims that the product "sold, handled or distributed" out of

which the occurrence arose was the electric hot water heater and that only the electric hot water heater, but not the rest of the "Silver Dollar," is excluded from property damage coverage.

The position of INA that the exclusion clause is unambiguous and admits only of the construction that the product excluded consists of everything which the insured "manufactured, sold, handled or distributed" even though only an identifiable part of the entire product causes the damage is supported by out-of-state cases. (*Home Indemnity Company* v. *Miller* (8th Cir. 1968) 399 F.2d 78 (Improper placement of footings and improper installation of the roof caused extensive damage to the house, but the product which was excluded from coverage was "the completed home."); *Vobill Homes, Inc.* v. *Hartford Accident & Indem. Co.* (La.App. 1965) 179 So.2d 496, writ of review refused (1966) 248 La. 698 [181 So.2d 398] (The entire house was the product excluded from coverage.); *Kendall Plumbing, Inc.* v. *St. Paul Mercury Ins. Co.* (1962) 189 Kan. 528 [370 P.2d 396] (A refrigerator unit and a "starter" were installed by the insured to heat and air condition a building. The "starter" malfunctioned damaging both the "starter" and the refrigerator unit. Since both items were "handled" by the insured, both were excluded from coverage even though only the "starter" was defective.).) *Home Indemnity Company* relied in part upon *Vobill Homes, Inc.* which in turn relied heavily upon *Volf* v. *Ocean Accident & Guar. Corp.* (1958) 50 Cal.2d 373 [325 P.2d 987] and *Liberty Bldg. Co.* v. *Royal Indem. Co.* (1960) 177 Cal.App.2d 583 [2 Cal.Rptr. 329]. We must thus determine whether the reported California cases stand for the position taken by INA and for the propositions for which they were cited by the out of state cases.

In *Volf* v. *Ocean Accident & Guar. Corp.* (1958) 50 Cal.2d 373 [325 P. 2d 987] the insured was a general contractor who constructed a house with stucco walls. The stucco was defective and the owner of the house was successful in compelling the general contractor to put new stucco over the old at an additional cost to the contractor of $1,309.15. The contractor sought this amount from the insurer under a policy which contained an exclusion clause similar to that involved here. The Supreme Court held that the injury was excluded "for it was to a product 'manufactured, sold, handled or distributed . . . by the named insured' as well as to 'work completed by . . . the named insured.'" While the court did not specify whether the "product" was the stucco applied to the exterior or the entire house, it is significant that the court noted that there was "no finding that the house was injured by reason of the application of the defective stucco." The insured general contractor constructed the entire house and if the

house was the "product" it would have been immaterial whether other parts of the house were injured by reason of the application of the defective stucco. In later explaining *Volf,* the Supreme Court said that "the wall itself, as opposed to its constituent materials, could be considered 'work completed by the insured,' and within the exclusion." (*Geddes & Smith, Inc.* v. *St. Paul Mercury Indem. Co.* (1965) 63 Cal.2d 602 [47 Cal.Rptr. 564, 407 P.2d 868].)[1] Again, the significance is that although the general contractor constructed the entire house, the court did not say that the entire house was within the exclusion as work completed by the insured.

*Liberty Bldg. Co.* v. *Royal Indem. Co.* (1960) 177 Cal.App.2d 583 [2 Cal.Rptr. 329] involved virtually the same exclusion clause as is here involved. There the subdivider and building contractor who was the insured was compelled to settle many claims with purchasers of houses which were defective because the stucco walls cracked and flaked away. Again, the insured built, sold and handled each entire house, not merely the stucco walls. The court nonetheless concluded that "the stucco was the 'goods or product . . . or premises alienated . . . or work completed . . . out of which the accident' arose." While it is true that the exclusion clause precluded recovery, this was because only the stucco was damaged and not any other portions of the houses.

In both *Eichler Homes, Inc.* v. *Underwriters at Lloyd's, London* (1965) 238 Cal.App.2d 532 [47 Cal.Rptr. 843] and *Blackfield* v. *Underwriters at Lloyd's, London* (1966) 245 Cal.App.2d 271 [53 Cal.Rptr. 838] the exclusion clause in the insurance policies excluded liability "(1) For repairing or replacing any defective product or products manufactured, sold or supplied by the Assured or any defective part or parts thereof nor for the cost of such repair or replacement or (2) For the loss of use of any such defective product or products or part or parts thereof or (3) For damage to that particular part of any property upon which the Assured is or has been working caused by the faulty manner in which the work has been performed." The insured in each case had constructed an entire house. An identifiable portion of the house was defective causing damage to other parts of the house. In each instance recovery was permitted for injury to

---

[1]*Geddes & Smith, Inc.* v. *St. Paul Mercury Indemnity Co.* (1959) 51 Cal.2d 558 [334 P.2d 881] and *Geddes & Smith, Inc.* v. *St. Paul Mercury Indem. Co.* (1965) 63 Cal.2d 602 [47 Cal.Rptr. 564, 407 P.2d 868], although discussed by the parties, are not helpful because there the insured supplied only doors for 76 houses constructed by a contractor. The exclusion clause in the insured's policy prevented recovery by the general contractor from the insurer for injury to or destruction of the doors themselves, but did not preclude recovery of damages to the houses resulting from the faulty doors.

other portions of the house. It was arguable that the "product . . . manufactured, sold or supplied" by the insured was the entire house and that the cost of repairing or replacing any portion thereof was therefore excluded. That argument was in fact made in *Blackfield* and rejected by the court as "an unreasonable interpretation of the provision."

We conclude from the foregoing cases that the exclusion clause involved in the case at bench is reasonably susceptible of the interpretation that the electric hot water heater was the "product" out of which the occurrence arose.

■ The question of whether both parties to the insurance contract intended that interpretation is more easily resolved. The insured communicated to INA its requirement that the policy cover "the hazard of a loss to a vessel sold by the insured, from a cause arising in the insured's work or addition of equipment in the preparation of the vessel for sale or delivery." The response of INA was to tender the "Comprehensive Multiple Liability Policy" in question here. Since the exclusion clause is susceptible of the construction given to it by the trial court and since that construction accords with the requirement of the insured as disclosed to INA, a reasonable inference is that INA in issuing the policy agreed to that construction of the exclusion clause.

### Proration Between Two Policies

■ INA claims that Home should bear a portion of the loss. The INA policy provides that if the insured has other insurance against a loss covered by the policy, INA "shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss." The policy issued to the insured by Home provided that it does not apply to any liability for "loss, damage or expense which may be recoverable under any other insurance inuring to the benefit of the [insured] except as to any excess over and above the amount recoverable thereunder."

INA cites and relies upon cases which we expressly refused to follow in *Fireman's Fund etc. Ins. Companies* v. *State Farm etc. Ins. Co.* (1969) 273 Cal.App.2d 445 [78 Cal.Rptr. 38]. In that case we acknowledged the irreconcilable conflicts in California reported decisions and chose to follow the line of cases holding "that in the case of multiple insurance policies covering the same loss, one of which contains a provision for proration in the event of other insurance and the other a clause that it shall be treated as 'excess insurance' to any other policy, the policy with the proration clause is pri-

mary and must bear the loss to its policy limits." INA points out that the Home policy does not contain a pure "excess insurance" clause. However, for purposes involved here the clause in the Home policy has the same effect as though it read: "If there is other insurance against an occurrence covered by this policy, this insurance shall be deemed excess insurance over and above the applicable limits of all such other insurance." The last quoted clause was contained in a policy involved in *Donahue Constr. Co.* v. *Transport Indem. Co.* (1970) 7 Cal.App.3d 291 [86 Cal.Rptr. 632] where the Court of Appeal for the First Appellate District followed our decision in *Fireman's Fund.* It is significant that *Peerless Cas. Co.* v. *Continental Cas. Co.* (1956) 144 Cal.App.2d 617 [301 P.2d 602], upon which INA so heavily relies, was a decision from the First Appellate District which has now been expressly repudiated in *Donahue* by the Court of Appeal for the First Appellate District.

The trial court properly found that the INA policy was primary and since the judgment did not exceed the limits of liability of that policy, the excess clause of the Home policy did not come into play.

The judgment is affirmed.

Wood, P. J., and Thompson, J., concurred.

A petition for a rehearing was denied November 30, 1970, and appellant's petition for a hearing by the Supreme Court was denied December 30, 1970.