573 P.2d 76

**ADAMS TREE SERVICE, INC.,**
Appellant,

v.

**The HAWAIIAN INSURANCE & GUARANTY COMPANY, LTD., and Employers Reinsurance Corporation, Appellees.**

**No. 2 CA–CIV 2478.**

Court of Appeals of Arizona,
Division 2.

Oct. 7, 1977.

Rehearing Denied Nov. 18, 1977.

Review Denied Dec. 13, 1977.

---

386

Miller, Pitt & Feldman, P. C., by Stanley G. Feldman, Tucson, for appellant.

Slutes, Browning, Zlaket & Sakrison, P. C., by D. Thompson Slutes, Tucson, for appellees.

## OPINION

RICHMOND, Judge.

This is an appeal from a summary judgment in favor of The Hawaiian Insurance and Guaranty Company, Ltd. (Hawaiian) and Employers Reinsurance Corporation (Employers) on the basis that comprehensive general liability insurance policies issued to Bill Breck Dodge, Inc. (Breck) did not afford coverage for damages previously awarded to Adams Tree Service, Inc. (Adams). We affirm.

The motion for summary judgment was submitted on the insurance policies and the pleadings, findings of fact and conclusions of law in the action brought by Adams against Breck for negligent modification of a truck that collapsed during use.[1] In the prior case the court had entered judgment against Breck in the amount of $99,956.33, including $73,956.33 for loss of use of the truck.[2] Hawaiian and Employers had refused to defend Breck, and Breck assigned its rights under the insurance policies to Adams.

Breck was engaged in the business of selling new motor vehicles and repairing, reconditioning and selling used motor vehicles. Following negotiations for the sale to Adams of a used Dodge tractor truck, Breck agreed to convert the tractor truck into a dump truck by cutting the chassis and placing a 24-inch extension into the basic frame members, and by installing a dump body. The court in the prior action concluded:

> On or about August 22, 1969 [Breck] sold and delivered a 1967 Dodge CNT–900 ten wheel dump truck to [Adams], which was in a defective condition; prior thereto, [Breck] through its employees and agents, was negligent in the modification of the chassis of said 1967 Dodge truck and such negligence was the proximate cause of the said breakdown and damages suffered by [Adams] . . . .
>
> [Breck] was negligent in failing to recognize that the original chassis on said 1967 Dodge truck was not of sufficient weight and strength to accommodate modification and that such negligence was a prox-

---

1. The insurers also moved for summary judgment on grounds of fraud, collusion between Breck and Adams, and breach of the cooperation clause in the policies. The trial court found that issues of fact precluded summary judgment on those grounds.

2. The court did not identify the other $26,000 awarded as damages, but found that the truck "broke down" when the chassis collapsed, resulting in loss of business and loss of good credit standing, over and above loss of use requiring rental of replacement vehicles at costs totaling $73,956.33.

imate cause of the breakdown and the damages suffered by [Adams].

[Breck] through its employees, was negligent in failing to adequately supervise and inspect the modification work to see that it was done in compliance with industry standards and that such negligence was a proximate cause of the breakdown and the damages suffered by [Adams].

Refusal of Hawaiian and Employers to defend Breck was based on policy exclusions applicable to products and completed operations hazards. Hawaiian's 1966 revised standard comprehensive general liability policy provided:

"This insurance does not apply:

\* \* \* \* \* \*

"(l) to property damage to the named insured's products arising out of such products or any part of such products;

"(m) to property damage to work performed by or on behalf of the named insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith;"

Exclusions in the Employers policy were identical in all material respects.[3] Both policies contained the following definitions:

" 'Damages' includes . . . damages for loss of use of property resulting from property damage;

" 'Named insured's products' means goods or products manufactured, sold, handled or distributed by the named insured or by others trading under his name, including any container thereof (other than a vehicle), . . . ;

" 'Property damage' means injury to or destruction of tangible property."

Hawaiian in its policy agreed to pay "on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of . . . property damage to which this insurance ap-

plies, . . . and . . . to defend any suit against the insured seeking damages on account of such . . . property damage."

Employers' obligation also is to indemnify "for damages because of . . . property damage to which this policy applies," and "to defend any suit . . . seeking damages on account of such . . . property damage."

Adams contends that exclusions (l) and (m) in the Hawaiian policy are not applicable to damage to the truck, because Breck's product was the modified chassis, rather than the entire truck, and the work performed by Breck was modification of the chassis. It relies on a line of cases summarized in *L. D. Schreiber Cheese Co. v. Standard Milk Co.*, 457 F.2d 962, at 965 (8th Cir., 1972):

"Some courts have been able to make a distinction in cases where an entity made by the insured is composed of components made either by the insured or another, and one of the component parts is defective and damages the entity. In such a case, these courts would allow recovery against the liability carrier for the entity less the cost of the defective component by construing the 'out of which the accident arises' exclusion as only applicable to the part or component that was defective."

These cases include *S. L. Rowland Construction Co. v. St. Paul Fire & Marine Ins. Co.*, 72 Wash.2d 682, 434 P.2d 725 (1967), fire damage to a home resulting from negligent placement of wooden floor joists in close proximity to a firebox; *Owens Pacific Marine, Inc. v. Insurance Co. of North America*, 12 Cal.App.3d 661, 90 Cal.Rptr. 826 (1970), destruction of a boat when a hot water heater exploded; *Pittsburgh Bridge & Iron Works v. Liberty Mutual Ins. Co.*, 444 F.2d 1286 (3rd Cir., 1971), damage to a tramway resulting from negligent construction of a saddle. At the very least, Adams

---

**3.** "This policy shall not apply:

\* \* \* \* \* \*

"(b) to property damage to (1) property owned by the Named Insured, (2) the Named Insured's products arising out of such products or any part of such products, or (3) work performed by or on behalf of the Named Insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith;"

388

argues, the results reached in those cases create an ambiguity that must be resolved in favor of coverage. *See Federal Insurance Co. v. P.A.T. Homes, Inc.*, 113 Ariz. 136, 547 P.2d 1050 (1976).

The trouble with Adams's argument is that the cases on which it relies are construing a different exclusion, which recited that the policy does not apply:

"To injury to or destruction of any goods [or] products * * * manufactured, sold, handled or distributed * * * by the named insured, or work completed by or for the named insured, out of which the accident [or occurrence] arises."

The significance of the variance in the exclusionary clauses has been explained by Dean Roger C. Henderson:[4]

"The products hazard and completed operations provisions are not intended to cover damage to the insured's products or work project out of which an accident arises. The risk intended to be insured is the possibility that the goods, products or work of the insured, once relinquished or completed, will cause bodily injury or damage to property other than to the product or completed work itself, and for which the insured may be found liable. The insured, as a source of goods or services, may be liable as a matter of contract law to make good on products or work which is defective or otherwise unsuitable because it is lacking in some capacity. This may even extend to an obligation to completely replace or rebuild the deficient product or work. This liability, however, is not what the coverages in question are designed to protect against. The coverage is for tort liability for physical damages to others and not for contractual liability of the insured for economic loss because the product or completed work is not that for which the damaged person bargained.

"This limitation on the type of property damage covered was expressed in the policies prior to 1966 by language which excluded coverage for injury to or destruction of 'any goods, products or con-

tainers thereof manufactured, sold, handled or distributed or premises alienated by the named insured, or work completed by or for the named insured, out of which the accident arises.' Where a product or work project was looked upon as an undivided whole there was little difficulty in the application of this provision. For example, where a grain elevator developed leaks or collapsed or where a foundation wall on a home collapsed it was clear that the damage to the work product was caused by an accident or occurrence arising out of the work itself. Conversely, where the product or work project resulted in physical damage to property which was clearly independent of and unrelated to the product itself there was little problem.

"Not all products, however, were looked upon as an undivided whole, but were considered by some courts as being comprised of components. Where this view was taken a question arose as to whether the insurer would be liable for damages caused to one component by another component. In *S. L. Rowland Construction Co. v. St. Paul Fire and Marine Insurance Co.*, [supra] the insurer was held liable under the products hazard and completed operations coverages for fire damage to a home constructed by the insured caused by the placement of a joist or header too near the firebox of a fireplace. The court reasoned that the exclusionary clause in question did not apply to the entire house as being the product of the insured, but that it applied only to the component parts thereof out of which the accident arose. This view was not universally accepted, but did cause enough concern to insurers that it was remedied in 1966. * * * "

Thus, where the old exclusion made it possible for some courts to limit its application to the component parts as the "product out of which the accident arose," i. e., the heater rather than the entire boat in *Owens Pacific Marine, Inc.*, and the saddle rather than the tramway in *Pittsburgh Bridge & Iron Works*, the same result cannot be

---

4. "Insurance Protection for Products Liability and Completed Operations—What Every Law-

yer Should Know," 50 Neb.L.R. 415 (1971) at 441–442.

reached under the language of the 1966 revision employed in the Hawaiian and Employers policies, which expressly excludes "property damage to the named insured's products arising out of such products *or any part of such products*," and "property damage to work performed . . . arising out of the work *or any portion thereof*, or out of materials, parts or equipment furnished in connection therewith."

Cases construing the 1966 exclusion have universally reached the same result as the trial court. *See Southwest Forest Industries, Inc. v. Pole Buildings, Inc.*, 478 F.2d 185 (9th Cir., 1973); *Engine Service, Inc. v. Reliance Insurance Company*, 487 P.2d 474 (Wyo., 1971); *Haugan v. Home Indemnity Company*, 86 S.D. 406, 197 N.W.2d 18 (1972).[5] In *Darby v. Federal Insurance Company*, 281 So.2d 561 (Fla.App., 1973), relied on by Adams, the court refused to extend (m) beyond the work actually performed but expressly held the exclusion unambiguous. We agree that (m) would not exclude coverage in the present case beyond the modification of the chassis and installation of the dump body, the only work actually performed by Breck. The findings and conclusions from the previous action do not reflect any "injury to or destruction of tangible property" outside those areas, and the judgment could be affirmed on that basis.

We rest our decision, however, on exclusion (*l*). The dump truck comes within the policy definitions of "named insured's products" as "goods or products manufactured, sold, handled or distributed by the named insured."[6] Whether or not the modified chassis constituted a separate "product," as contended by Adams, it was a part of the dump truck "manufactured, sold, handled or distributed" by Breck. Under the clear and unambiguous language of either policy, there was no liability coverage for property damage (injury to or destruc-

tion of tangible property) to the dump truck (manufactured, sold, handled or distributed by Breck) arising out of the truck or any part of the truck (including the modified chassis, whether a separate product or not).

Inasmuch as the policies did not apply to property damage to the truck, there was no coverage for loss of use as "damages because of . . . property damage *to which this policy applies.*"

Affirmed.

HOWARD, C. J., and HATHAWAY, J., concur.

---

5. The result in *Haugan v. Home Indemnity Company*, supra, was expressly disapproved by the Arizona Supreme Court in *Federal Insurance Co. v. P.A.T. Homes, Inc.*, supra, on other grounds involving an ambiguity created by an exception to another exclusion that is not applicable here.

6. We reject the suggestion by Adams that the parenthetical phrase, "other than a vehicle," was intended to except a truck from the definition of "named insured's products." The exception does not refer to the basic definition but merely limits its extension "including any container thereof."