[Civ. No. 66750. Second Dist., Div. Seven. Sept. 12, 1983.]

WESTERN EMPLOYERS INSURANCE COMPANY,
Plaintiff and Respondent, v.
ARCIERO & SONS, INC., et al., Defendants and Appellants.

COUNSEL

Burke, Williams & Sorensen and Peter M. Thorson for Defendants and Appellants.

Berg & Phelps and Arthur Paul Berg for Plaintiff and Respondent.

OPINION

**JOHNSON, J.**—In this case we construe the "work product" exclusion contained in the standard form comprehensive general liability policy issued to a general contractor. This is a case of first impression in California.[1]

### FACTS AND PROCEEDINGS BELOW

Arciero & Sons (Arciero) was the general contractor on a condominium project. Subcontractors designed and constructed the condominium units as

---

[1]But see dictum in *Central Mutual Ins. Co.* v. *Del Mar Beach Club Owners Assn.* (1981) 123 Cal.App.3d 916, 928-929 [176 Cal.Rptr. 895].

well as a slope and retaining wall. A few years after the project was completed the retaining wall collapsed. This caused structural damage to the condominium units and damage to the slope held by the wall. The condominium owners sued Arciero seeking reimbursement for damage to the wall, the slope and the units.

Arciero tendered defense of the action to Western Employers Insurance Company (Western) pursuant to its general liability policy. Western accepted the defense of the action subject to a reservation of rights that the loss was not covered by the policy. Western settled the claims of the condominium owners and then sued Arciero for declaratory relief and restitution of the sums it paid in defending and settling the condominium owners' suit.

Western moved for summary judgment on the ground the damage to the condominium units, slope and wall were outside the coverage of Arciero's policy by reason of the "work product" exclusion. This exclusion provides that the policy does not apply ". . . (o) to property damage to work performed by or on behalf of the named insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith . . . ."

Arciero concedes that this exclusion applies to the wall, and to the slope if it too was defective, but contends that the exclusion does not apply to structural damage to the units resulting from the defective wall and slope. Arciero admitted in the trial court and on appeal that the condominium owners suffered no physical injuries or property damage other than the structural damage to their units.

The trial court determined that, as a matter of law, the damages to the slope, wall and units were not covered by the insurance policy and, there being no issues of material fact, granted judgment to Western. We affirm.

## DISCUSSION

■ The core issue in this case is whether the exclusion applies *only* to the work that fails or applies to other work of the insured that is damaged by the work that fails. Based on the plain language of the exclusion and the purpose behind it, we hold that the exclusion not only applies to the insured's defective work but also applies to the insured's satisfactory work that is damaged by the work that fails.

By its terms the exclusion applies "to property damage to work performed by or on behalf of the named insured . . . ." The parties agree that the

contractor's work included the condominium units, the slope and the retaining wall. They also agree that the work that actually failed, i.e., the retaining wall and possibly the slope, is excluded from coverage. Whether the policy excludes damages to the condominium units themselves depends on whether the damage to them "[arose] out of the work or any portion thereof."

The condominium units were work performed by the contractor. The condominium units were damaged by the defective retaining wall, which was also work performed by the contractor. Thus, the application of the exclusion clause to the condominium units is compelled by the plain language of the clause itself. The decisions from every other jurisdiction which have addressed this exclusion are in accord with our interpretation. (See, e.g., *Indiana Ins. Co.* v. *DeZutti* (1980) — Ind. — [408 N.E.2d 1275]; *Weedo* v. *Stone-E-Brick, Inc.* (1979) 81 N.J. 233 [405 A.2d 788]; *Breaux* v. *St. Paul Fire & Marine Ins. Co.* (La. 1977) 345 So.2d 204; *Timberline Equip. Co., Inc.* v. *St. Paul F. & M. Ins. Co.* (1978) 281 Ore. 639 [576 P.2d 1244]; *Adams Tree Service* v. *Hawaiian Ins., etc.* (1977) 117 Ariz. 385 [573 P.2d 76]; *B. A. Green Const. Co., Inc.* v. *Liberty Mutual Ins. Co.* (1973) 213 Kan. 393 [517 P.2d 563].)

█ It is well-known that any ambiguities in an insurance policy will be construed against the insurer. (*Reserve Insurance Co.* v. *Pisciotta* (1982) 30 Cal.3d 800, 808 [180 Cal.Rptr. 628, 640 P.2d 764] and cases cited therein.) This rule of construction explains the results in California cases construing earlier versions of the work product exclusion. (See, e.g., *Eichler Homes, Inc.* v. *Underwriters at Lloyd's, London* (1965) 238 Cal.App.2d 532 [47 Cal.Rptr. 843]; *Blackfield* v. *Underwriters at Lloyd's, London* (1966) 245 Cal.App.2d 271 [53 Cal.Rptr. 838]; *Owens Pacific Marine, Inc.* v. *Insurance Co. of North America* (1970) 12 Cal.App.3d 661 [90 Cal.Rptr. 826].) In *Blackfield,* a defective foundation resulted in structural damage to the house. In *Owens Pacific Marine,* an electric hot water heater exploded destroying a boat. These cases interpreted the work product exclusion as only excluding damages to the failed work itself, not to the remainder of the damaged work. This interpretation was not unreasonable given the language of the exclusions at issue in those cases. The policy in *Blackfield* and *Eichler Homes* excluded "'. . . damage to that particular part of any property upon which the Assured is or has been working *caused by the faulty manner in which the work has been performed.*'" (*Blackfield* v. *Underwriters at Lloyd's, London, supra,* 245 Cal.App.2d at pp. 273, 276, fn. 1, italics added.) The policy in *Owens* excluded "work . . . out of which the occurrence arises." (*Owens Pacific Marine, Inc.* v. *Insurance Co. of North America, supra,* 12 Cal.App.3d at p. 665.)

The ambiguity in these exclusions was whether the "work" excluded was the entire project, i.e., the home or the boat, or only the component part of the project that failed, i.e., the foundation or the electric heater. Thus, in *Blackfield,* the insurance companies attempted to extend the exclusion quoted above "to the whole house, including the nondefective parts thereof, on the theory that it is property upon which the respondents had worked." The court held, "This is an unreasonable interpretation of the provision. It only excludes damage to 'that particular part' or parts upon which the Assured has performed faulty work. . . . [¶] Moreover, if there is any ambiguity or uncertainty in this exclusionary provision, it should be resolved against the insurer." (245 Cal.App.2d at p. 276.) Similarly, in *Owens Pacific Marine,* the insurance company argued that the exclusion applied to the boat as an undivided whole. The insured argued that only the electric heater was excluded from property damage coverage. Conceding that there was support for the insurance company's position, the court concluded that "the exclusion clause . . . is reasonably susceptible of the interpretation that the electric hot water heater was the 'product' out of which the occurrence arose." (12 Cal.App.3d at p. 668.)

The current work product exclusion was drafted to eliminate the ambiguity of the exclusions in *Eichler, Blackfield* and *Owens.* (See Henderson, *Insurance Protection for Products Liability and Completed Operations—What Every Lawyer Should Know* (1971) 50 Neb. L.Rev. 415-442, 443; *Todd Shipyards Corp.* v. *Turbine Service, Inc.* (5th Cir. 1982) 674 F.2d 401, 421-422.) We believe it has succeeded.

Our holding is consistent with the purpose of insurance policies of this type. "The risk intended to be insured is the possibility that the . . . work of the insured, once relinquished or completed, will cause bodily injury or damage to property other than to the product or completed work itself . . . ." (Henderson, *supra,* at p. 441.; see also 2 Long, The Law of Liability Insurance (1982) § 11.13, pp. 11-70 *ff.*) The policy is neither a performance bond nor an "all risk" policy. (Cf. *Associated Engineers, Inc.* v. *American Nat. Fire Ins. Co.* (N.D.Cal. 1959) 175 F.Supp. 352, 353.) Rather, the effect of the policy is to make the contractor stand its own replacement and repair losses while the insurer takes the risk of injury to the property of others.

This makes sense from the standpoint of the insurer and the insured. By excluding repair and replacement losses, the insurer gives the contractor an incentive to exercise care in workmanship thereby reducing the risk that is covered: damage to property of third parties. Coverage of repair and replacement costs would undermine this incentive. If the work failed the in-

surer would end up holding the scrap. Excluding repair and replacement costs also reduces the cost of the policy. The insurer is freed from administering frequent claims for minor repairs and can set its rate based on the less frequent but potentially large claims for damage to the property of others. The contractor bears the cost of repair and replacement which is usually small and, in any event, cannot exceed the cost of total replacement of the work. He is protected from the risk of damage to the property of others which, in contrast, knows no limitation. If the retaining wall had collapsed crushing the new Porsche of a condominium resident, the loss would have far exceeded the cost of repairing the condominium units. (See Macaulay, *Justice Traynor and the Law of Contracts* (1961) 13 Stan.L.Rev. 812, 825-826.)

The general contractor, of course, is free to pursue the subcontractors responsible for building the retaining wall and slope. Indeed, the record in this action shows that the contractor has cross-complained against the responsible subcontractors for indemnification. The subcontractors' work was merely a component part of the condominium project. Thus, assuming the subcontractors have a similar liability policy, damage to the condominium units caused by the failure of the wall and slope would fall outside the work product exclusion and be covered. (*Indiana Ins. Co.* v. *DeZutti, supra,* 408 N.E.2d at p. 1280.)

Because Western was not potentially liable for the damages sought in the underlying suit against Arciero, it had no duty to defend Arciero in that suit. (*Gray* v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263 [54 Cal.Rptr. 104, 419 P.2d 168].) Under our disposition of this case, we need not address the question whether Western's duty to defend Arciero would include the duty to prosecute a cross-complaint for indemnity by Arciero against the subcontractors.

### DISPOSITION

The judgment is affirmed.

Schauer, P. J., and Paez, J.,* concurred.

Appellants' petition for a hearing by the Supreme Court was denied November 25, 1983.

---

*Assigned by the Chairperson of the Judicial Council.