Filed 6/2/14  Flynn v. United Contractors Ins. Co. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| JOHN FLYNN,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>UNITED CONTRACTORS INSURANCE COMPANY,<br><br>    Defendant and Respondent. | D062915<br><br><br>(Super. Ct. No. 37-2010-00060875-CU-IC-NC) |


APPEAL from a judgment of the Superior Court of San Diego County, Timothy M. Casserly, Judge.  Affirmed

John K. Saur for Plaintiff and Appellant.

Archer Norris, William Eric Blumhardt, Namvar A. Mokri and Daniel J. McKenzie for Defendant and Respondent.

# I.

## INTRODUCTION

Appellant John Flynn, doing business as Flynn Company (Flynn), appeals from a judgment entered in favor of defendant United Contractors Insurance Company (United Contractors) after the trial court granted United Contractors's motion for summary judgment. United Contractors provided a general liability insurance policy to Flynn between June 1, 2006 and June 1, 2007. During the policy period and for a period of time after the policy period ended, Flynn worked as a subcontractor providing glass and glazing work for the doors and windows on a residential project for which Oakhurst Builders was the general contractor. Later, Oakhurst Builders sued Flynn as a result of Flynn's work on the project.

In response to a tender of the Oakhurst Builders complaint, United Contractors declined to defend Flynn against the action and denied coverage for the claims asserted in the complaint. Flynn brought this action against United Contractors, asserting that United Contractors owed Flynn a defense. United Contractors moved for summary judgment, which the trial court granted in full, relying on the ground that an "ongoing operations" exclusion in Flynn's policy relieved United Contractors of any duty to defend or indemnify Flynn with respect to the claims asserted in the Oakhurst Builders litigation.

On appeal, Flynn contends that the trial court erred in relying on the "ongoing operations" exclusion. Specifically, Flynn asserts that this exclusion was not " 'conspicuous, plain, and clear' " (quoting *Haynes v. Farmers Ins. Exchange* (2004) 32 Cal.4th 1198, 1204), and is thus unenforceable. Flynn also argues that the "ongoing

2

operations" exclusion, when given the interpretation proposed by United Contractors, creates what amounts to illusory insurance coverage, because under that interpretation there would be virtually no coverage for any property damage at all, in view of the one-year policy period.

In response, United Contractors defends the enforceability of the "ongoing operations" exclusion on which the trial court relied, and also contends that the trial court could have relied on any number of other exclusions that demonstrate conclusively that there was no coverage under the policy for the damages sought by Oakhurst Builders in its complaint against Flynn, and, thus, that United Contractors did not have a duty to defend or indemnify Flynn with respect to that action.

We conclude that no duty to defend (or ultimately indemnify) arose under the Oakhurst Builders complaint because the damages sought in that complaint are excluded from coverage under Flynn's general liability insurance policy.  Given our conclusion that there was no possibility of coverage, and, therefore, no duty to defend, the trial court did not err in entering judgment in favor of United Contractors on Flynn's complaint in this action.

II.

FACTUAL AND PROCEDURAL BACKGROUND

A.    *Factual background*

1.      *The project and complaint against Flynn*

Oakhurst Builders was the general contractor on a residential construction project located in La Jolla, California.  Pursuant to a subcontract entered into in August 2006,

3

Oakhurst Builders retained Flynn to supply the glass, perform the glazing work, and install the windows and doors for the project. Flynn began work on the project in March 2007 and continued to work on the project into May 2008.

In December 2009, Oakhurst Builders filed a complaint against Flynn arising from Flynn's work on the project. The complaint asserted five causes of action, including breach of contract, negligence, express indemnity, implied contractual indemnity, and contribution. The complaint generally alleged that Flynn had breached the contract between Oakhurst Builders and Flynn by failing to perform as required under the contract, including by failing to follow the plans and specifications as required under the contract.

Under the second cause of action for negligence, Oakhurst Builders alleged that Flynn failed to use reasonable care in selecting, installing and assembling the glass and related glazing work, and that, as a proximate result, some of the glass and related work was defective and failed, requiring its repair and replacement, including demolition of areas surrounding Flynn's defective work. Oakhurst Builders further claimed that as a proximate result of Flynn's defective work, it had incurred costs to investigate and repair the subject property, and also incurred the loss of use of the property.

2.    *The insurance policy*

Flynn was insured under a general liability policy (the Policy) issued by United Contractors for the period between June 1, 2006 to June 1, 2007.

In describing the coverage provided under the Policy, the Policy states:

4

"We will pay those sums that the Named Insured becomes legally obligated to pay as Tort Damages because of Bodily Injury or Property Damage to which this insurance applies. We have the right and duty to defend the Named Insured against any Suit seeking Tort Damages. However, we have no duty to defend the Named Insured when any other insurer is obligated to defend the Named Insured. . . . We have no duty to defend the named Insured or any other Insured against any Suit seeking damages for Bodily Injury or Property Damage to which this insurance does not apply."

"Property Damage" is defined to mean:

"a. Physical injury to tangible property, including all resulting loss of use of that physically injured property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it.

"b. Property Damage does not include any of the following:

"(1) the loss of use of tangible property that is not physically injured;

"(2) the loss of use of physically injured tangible property arising from Your failure to complete the work called for in Your contract for whatever reason;

"(3) any injury or damage, arising in whole or in part, from Your delay or failure to complete Your work for whatever reason."[1]

3.      *Oakhurst Builders tenders the complaint to United Contractors*

Flynn did not tender its defense to United Contractors after the complaint was filed. However, in May 2010, Oakhurst Builders tendered the complaint to United Contractors, arguing that it was an "additional insured" under the policy. Oakhurst Builders sought to have United Contractors "honor the additional insured provisions and

---

[1]     We provide additional information regarding the specific language of the policy, including certain relevant exclusions, in the discussion section of this opinion, *post*.

5

the direct, first party claims being made [by Oakhurst Builders]." United Contractors treated the tender by Oakhurst Builders as a tender by Flynn.

United Contractors advised Flynn by letter that it would decline to provide a defense to Flynn in the Oakhurst Builders's action, based on the allegations of the complaint. The letter identified a number of grounds for this determination, including the applicability of exclusions j(5) and (6), k, *l*, and rr in the Policy.

B.    *Procedural background*

Flynn filed a complaint for damages against both United Contractors and Probuilders Specialty Insurance Company, which issued Flynn a general liability policy subsequent to the expiration of the United Contractors policy at issue in this appeal. As to United Contractors, the complaint alleged two causes of action: breach of contract and breach of the implied covenant of good faith and fair dealing.

Approximately 11 months after the complaint was filed, United Contractors filed a motion for summary judgment, arguing that it had no duty to defend or indemnify Flynn with respect to the underlying complaint in the Oakhurst Builders action.

Flynn opposed the summary judgment motion, arguing that the subject exclusions did not apply to completely eliminate any potential for coverage under the Policy. Flynn also argued that the "ongoing operations" exclusion included as part of exclusion j(5) was not conspicuous, plain, or clear, and was therefore unenforceable.

After a hearing, the trial court issued a minute order in which it affirmed its prior tentative ruling granting United Contractors's motion for summary judgment. The court concluded that the "ongoing operations" exclusion language in the Policy, provided in

6

exclusion "j. **<u>Damage to Property Exclusion</u>**," "indicate[d] there is no coverage for property damage of any kind that arises from operations that are ongoing during the policy period, i.e., operations that are not completed before the policy expires.  The [United Contractors] policy was in effect from 6/1/06 to 6/1/07. . . .  [United Contractors] offers deposition testimony from Plaintiff, in which he indicates he was performing work pursuant to change orders as late as May 2008. . . .  Thus, Plaintiff's work continued for almost a year after the policy period expired.  This evidence indicates that Plaintiff's work was ongoing beyond the time the policy expired and thus there was no coverage under the [subject] language above."

The trial court rejected Flynn's argument that this exclusion was not conspicuous, plain and clear.  The court determined that it was clear that all of the language in the paragraphs under the "Property Damage" exclusion related to exclusions from coverage, and that there was no need to specifically highlight or use larger font for certain exclusions but not for other exclusions.  The court further concluded that the specific words used were plain and clear.  Because the court determined that the "ongoing operations" exclusion applied, such that there could be no coverage for Flynn's work on the Oakhurst Builders's project, the court found that it was unnecessary for the court to consider the other policy exclusions that United Contractors had raised in its motion.

The court entered judgment in favor of United Contractors on November 21, 2012. Flynn filed a timely notice of appeal.[2]

## III.

## DISCUSSION

A.     *Governing law*

    1.     *The law governing summary judgment*

A moving party is entitled to summary judgment when the party establishes that it is entitled to the entry of judgment as a matter of law.  (Code Civ. Proc., § 437c, subd. (c).)  A defendant may make this showing by demonstrating that the plaintiff cannot establish one or more elements of all of his causes of action, or that the defendant has a complete defense to each cause of action.  (*Towns v. Davidson* (2007) 147 Cal.App.4th 461, 466.)

In reviewing a trial court's ruling on a motion for summary judgment, the reviewing court makes " 'an independent assessment of the correctness of the trial court's ruling, applying the same legal standard as the trial court in determining whether there are any genuine issues of material fact or whether the moving party is entitled to judgment as a matter of law.  [Citations.]'  [Citation.]"  (*Trop v. Sony Pictures Entertainment, Inc*. (2005) 129 Cal.App.4th 1133, 1143.)

---

2     Flynn filed a notice of appeal after the court entered its minute order granting United Contractors's motion for summary judgment, but prior to entry of judgment.  In accordance with the rules proscribing liberal construction of a notice of appeal, we will treat Flynn's notice of appeal as a valid, albeit premature, appeal from the judgment.  (See Cal. Rules of Court, rule 8.104(e).)

"While [an] appellate court must review a summary judgment motion by the same standards as the trial court, it must independently determine as a matter of law the construction and effect of the facts presented. [Citation.] Accordingly, we are not bound by the trial court's stated reasons and review only the ruling, not its rationale." (*Blue Shield of California Life & Health Ins. Co. v. Superior Court* (2011) 192 Cal.App.4th 727, 732.) Further, we may affirm an order granting summary judgment on a ground not relied on by the trial court, if the parties have been afforded an opportunity to brief the issue. (Code Civ. Proc., § 437c, subd. (m)(2).)[3]

2.    *The law governing an insurer's duty to defend*

It is well established that "[t]he insurer's duty to defend is broader than its duty to indemnify." (*Crawford v. Weather Shield Mfg., Inc.* (2008) 44 Cal.4th 541, 547.) "The . . . duty [to indemnify] runs only to claims that are actually covered by the policy, while the duty to defend extends to claims that are merely potentially covered." (*Ibid*.)

Whether an insurer has a duty to defend "depends, in the first instance, on a comparison between the allegations of the complaint and the terms of the policy. . . . [¶] . . . [¶] If any facts stated or fairly inferable in the complaint, or otherwise known or

---

3    The Code of Civil Procedure requires that, if we affirm on a ground not relied upon by the trial court, we must "afford the parties an opportunity to present their views on the issue by submitting supplemental briefs." (Code Civ. Proc., § 437c, subd. (m)(2).) For the reasons stated below, we are affirming the judgment on grounds not relied upon by the trial court. However, the parties had an opportunity to address those grounds and in fact did address those grounds in their appellate briefing; they also addressed them in the trial court. There is thus no need to afford them a further opportunity to address the issues in supplemental briefing. (See ibid; *Byars v. SCME Mortgage Bankers, Inc.* (2003) 109 Cal.App.4th 1134, 1147, fn. 7.)

discovered by the insurer, suggest a claim potentially covered by the policy, the insurer's duty to defend arises and is not extinguished until the insurer negates all facts suggesting potential coverage. On the other hand, if, as a matter of law, neither the complaint nor the known extrinsic facts indicate any basis for potential coverage, the duty to defend does not arise in the first instance." (*Scottsdale Ins. Co. v. MV Transportation* (2005) 36 Cal.4th 643, 654-655.)

"Any doubt as to whether the facts establish the existence of the defense duty must be resolved in the insured's favor." (*Montrose Chemical Corp. v. Superior Court* (1993) 6 Cal.4th 287, 299-300 (*Montrose*).) A court may conclude that no duty to defend exists only where the underlying complaint " 'can by no conceivable theory raise a single issue which would bring it within the policy coverage.' " (*Ibid.*, quoting *Gray v. Zurich Insurance Co.* (1966) 65 Cal. 2d 263, 275, fn. 15, italics omitted.) "Facts merely tending to show that the claim is not covered, or may not be covered, but are insufficient to eliminate the possibility that resultant damages . . . will fall within the scope of coverage, therefore add no weight to the scales." (*Montrose*, *supra*, at p. 300.)

B.    *Analysis*

In the underlying action, Oakhurst Builders alleged that Flynn breached the contract with Oakhurst Builders by, among things, failing to complete the work in a timely manner, failing to follow the plans and specifications, and failing to pay suppliers. Oakhurst Builders also alleged that some of Flynn's work was defective and had failed, requiring the repair and replacement of his glass and related work, as well as the demolition of areas surrounding Flynn's defective work.

10

Flynn's policy with United Contractors provides that United Contractor agreed to "pay those sums that the **Named Insured** becomes legally obligated to pay as **Tort Damages** because of **Bodily Injury** or **Property Damage** to which this insurance applies." The Policy goes on to say that it "applies to **Bodily Injury** and **Property Damage** only if: [¶] (1) The **Bodily Injury** or **Property Damage** is caused by an **Occurrence** that takes place in the **Coverage Territory**; and [¶] (2) The **Bodily Injury** and **Property Damage** is caused by an **Occurrence** which takes place during the **Policy Period** whether or not such **Occurrence** is known to any **Insured**; and [¶] (3) The **Bodily Injury** or **Property Damage** resulting from such **Occurrence** first takes place during the **Policy Period**; and [¶] (4) The **Bodily Injury** or **Property Damage** arises from **Your Work** performed within the scope of operations: [¶] a. disclosed in **Your** application and; [¶] b. specifically insured under this policy."[4]

The Policy defines "Property Damage" as follows:

"29. **Property Damage** means:

"a. Physical injury to tangible property, including all resulting loss of use of that physically injured property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it.

"b. **Property Damage** does not include any of the following:

"1. The loss of use of tangible property that is not physically injured;

---

4    Although there does not appear to be an explanation of the use of bolding throughout the Policy, our review suggests that many of the bolded terms are included in the "DEFINITIONS" section of the Policy.

"2.  The loss of use of physically injured tangible property arising from Your failure to complete the work called for in Your contract for whatever reason;

"3.  Any injury or damage, arising in whole or in part, from Your delay or failure to complete Your work for whatever reason."[5]

In the "EXCLUSIONS" section, under "j. **Damage to Property Exclusion**," the Policy excludes from coverage, "That particular part of real property on which **You** or any contractors or subcontractors working directly or indirectly on **Your** behalf are performing operations, if the **Property Damage** arises out of those operations." Exclusion "k. **Damage to Your Product Exclusion**" provides that "**Property Damage** to **Your Product**" is excluded from coverage.  Under exclusion "*l*. **Damage to Your Work Exclusion**," the Policy excludes coverage for "**Property Damage** to **Your Work** or any part of it included in the **products-completed operations hazard**."[6]

Further, in exclusion "m. **Damage to Impaired Property and Property Not Physically Injured Exclusion**," the Policy excludes from coverage the following:

"**Property Damage** to **Impaired Property** and property that has not been physically injured, arising out of:

5    We focus our analysis on the "Property Damage" aspect of the Policy because there was no allegation of bodily injury in the underlying complaint.  The parties appear to agree that the bodily injury provisions do not apply here.

6    The "Products-Completed Operations Hazard" states that it "[i]ncludes all **Bodily Injury** and **Property Damage** occurring away from premises You own or rent and arising out of **Your Product** or **Your Work** except: [¶] (1) Products that are still in **Your** physical possession; or [¶] (2) Work that has not yet been completed."  The Policy then provides four different occurrences that will cause an insured's work to be "deemed completed."

12

"(1) A defect, deficiency, inadequacy or dangerous condition in **Your Product** or **Your work**; or

"(2) A delay or failure by **You** or anyone acting on **Your** behalf to perform a contract or agreement in accordance with its terms.

"This Exclusion applies to any property, real or personal, which is otherwise not physically injured or damaged, but which must be demolished, removed, repaired, replaced, altered, modified, or damaged in order to remove, repair or replace **Your Work** or **Your Product**."

The Policy defines "**Impaired Property**" as "tangible property, other than **Your Product** or **Your Work**, that cannot be used or is less useful because: [¶] a. It incorporates **Your Product** or **Your Work** that is known or thought to be defective, deficient, inadequate or dangerous; or [¶] b. **You** have failed to fulfill the terms of a contract or agreement; [¶] if such property can be restored to use by [¶] a. The repair, replacement, adjustment or removal of **Your Product** or **Your work**; or [¶] b. **Your** fulfilling the terms of the contract or agreement. [¶] **Impaired Property**, includes **all** property, real or personal, which is damaged in the course of demolishing, removing, repairing, replacing, altering, or adjusting **Your Work** or **Your Product**."

The Policy defines "**Your Product**" as:

"a. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

"(1) You;

"(2) Others trading under Your name; or

"(3) A person or organization whose business or assets you have acquired; and

13

"b. Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

"Your Product includes:

"a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance, or use of Your Product; and

"b. The providing of or failure to provide warnings or instructions."

The Policy defines "**Your Work**" as:

"a. Work or operations performed by **You** or on **Your** behalf; and

"b. Materials, parts or equipment  furnished in connection with such work or operations.

"**Your Work** includes:

"a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of **Your Work**; and

"b. The providing of or failure to provide warnings or instructions."

As various courts have explained, general liability policies for contractors "are not designed to provide contractors and developers with coverage against claims their work is inferior or defective."  (*Maryland Casualty Co. v. Reeder* (1990) 221 Cal.App.3d 961, 967.)  This is because "[t]he risk of replacing and repairing defective materials or poor workmanship has generally been considered a commercial risk which is not passed on to the liability insurer.  [Citations.]  Rather, liability coverage comes into play when the *insured's defective materials or work cause injury to property other than the insured's own work or products*."  (*Ibid*., italics added.)  " 'Replacement and repair costs are to some degree within the control of the insured.  They can be minimized by careful

14

purchasing, inspection of material, quality control and hiring policies. If replacement and repair costs were covered, the incentive to exercise care or to make repairs at the least possible cost would be lessened since the insurance company would be footing the bill for all scrap. Replacement and repair losses tend to be more frequent than losses through injury to other property, but replacement and repair losses are limited in amount since the greatest loss cannot exceed the cost of total replacement. If the insured will stand these losses, insurance can be provided more cheaply since the company will be freed from administering many small claims for repairs, and it can set a rate for the more unusual risk of injury to property other than the contractor's work or product. This risk can be the hazardous one since there are no natural limitations on the damage the contractor might do to a homeowner's or a neighbor's property.' [Citation.]" (*Id.* at pp. 967–968.)

Thus, a general liability insurance policy is not designed to serve as a performance bond or an all risk policy. (See *Western Employers Ins. Co. v. Arciero & Sons, Inc.* (1983) 146 Cal.App.3d 1027, 1031.) Again, the risk of repairing defective materials used by the contractor or poor workmanship completed by the contractor is to be borne by the contractor, and not passed on to the general liability insurer.

Flynn argues that "there is a very strong potential that at least some of the negligently caused damage alleged against Flynn in paragraph 14 of the Oakhurst complaint constitutes property damage which is at least potentially covered by the [United Contractors] policy." The allegations of the Oakhurst Builders's complaint on which Flynn relies to suggest that there is a potential for coverage are included in paragraphs 9 and 14 of the complaint. Paragraph 9 provides:

15

"FLYNN breached the Contract by failing to perform all the conditions and requirements to be performed by FLYNN under the Contract. Such breach includes but is not limited to failing to complete the work required under the Contract, *failing to complete such work in a timely fashion, failing to follow the plans and specifications as required under the Contract*, and failure to pay suppliers." (Italics added.)[7]

Paragraph 14 of the Oakhurst Builders's complaint provides:

"FLYNN negligently, carelessly, and wrongfully failed to use reasonable care in selecting, manufacturing, preparing, constructing, handling, installing, cutting, supervising, inspecting, and assembling the glass and the related glazing work. As a proximate and legal result of the negligence of FLYNN, some of the glass and r*elated work* is defective and has failed, requiring repair and replacement of the glass and *related work* as well as demolition of areas surrounding the defective work of FLYNN. As a proximate and legal result thereof, OAKHURST BUILDERS has been, and continues to be, damaged in an amount to be proven at trial. As a further proximate and legal result of the negligence of FLYNN, OAKHURST BUILDERS will incur and/or has incurred *costs to investigate and repair the Real Property, and has incurred loss of use of the Real Property* in an amount to be proven at trial." (Italics added.)[8]

We begin by noting that there is no allegation in the underlying complaint that Flynn's allegedly defective work caused physical injury to some portion of the residence other than the windows, doors or related glazing work.[9] Thus, a duty to defend would arise only if it is *fairly inferable* from the allegations of the complaint that some portion

---

[7] With respect to paragraph 9, Flynn focuses on and highlights the italicized portion of the quoted language.

[8] Again, Flynn focuses on and highlights the italicized portions of the quoted language from the underlying complaint.

[9] Although Flynn highlights the references to "related work" in paragraph 14, it is clear from the entire paragraph that the term "related work" is simply a short reference to "the related glazing work" mentioned in the first sentence of that paragraph.

16

of the damages sought in the underlying action are for physical injuries to portions of the project *apart from* Flynn's glass and related glazing work. We conclude no such inference can be fairly drawn based on the allegations of this complaint.

First, paragraph 9 clearly does not allege any facts that demonstrate that the damages sought might be potentially covered by the Policy. Flynn highlights the allegations that Flynn breached the contract with Oakhurst Builders by "failing to complete [the contracted] work in a timely fashion," and "failing to follow the plans and specifications as required under the Contract." However, these allegations do not suggest that Flynn's work caused damage to other property in the project. Rather, these allegations specifically refer to Flynn's failure to meet his contractual obligations, and do not allege injuries or damages apart from *contractual* damages. The Policy does not provide coverage for contractual damages, but, instead, covers only "those sums that the **Named Insured** becomes legally obligated to pay as **Tort Damages** because of **Bodily Injury** or **Property Damage** to which this insurance applies." Thus, the allegations of paragraph 9 do not suggest the existence of a claim potentially covered by the Policy.

We next consider whether the allegations of paragraph 14 leave open the possibility that any damages resulting from the lawsuit could fall within the scope of coverage of the Policy. The initial factual allegation of paragraph 14, i.e., that "FLYNN negligently, carelessly, and wrongfully failed to use reasonable care in selecting, manufacturing, preparing, constructing, handling, installing, cutting, supervising, inspecting, and assembling the glass and the related glazing work," do not allege any damages that could be covered under the Policy. Rather, these allegations specifically

17

refer only to Flynn's conduct, and do not allege any damages arising from Flynn's allegedly negligent and/or wrongful conduct in performing his own work.

The next sentence of paragraph 14 asserts that "[a]s a proximate and legal result of the negligence of FLYNN some of the glass and r*elated work* is defective and has failed, requiring repair and replacement of the glass and *related work* as well as demolition of areas surrounding the defective work of FLYNN." (Italics added.) To the extent that Flynn contends that the defects in, and failure of, the "glass and related work" referenced in this allegation triggers coverage under the Policy, we must reject such a position. As noted, exclusion "*l*" excludes from coverage any property damage to Flynn's own work. The complaint provides no basis to conclude that the allegation that some of the "glass and related work is defective and has failed" is anything but a direct reference to Flynn's work.

While the complaint also states that Flynn's alleged negligence required the "demolition of areas surrounding the defective work of FLYNN," this statement does not suggest the possibility of coverage. Under exclusion "m," the Policy specifically excludes coverage for the demolition of portions of the property that "[are] otherwise not physically injured or damaged, but which must be demolished, removed, repaired, replaced, altered, modified, or damaged in order to remove, repair or replace **Your Work** or **Your Product**." The reference to "demolition of areas surrounding the defective work" alleges the need to demolish parts of the property that were not injured as a result of Flynn's work. Rather, the portions referred to are areas of the property that had to be demolished in order to effectuate the repair and replacement of Flynn's alleged defective

18

work. The damages created by this type of demolition are clearly excluded from coverage under the Policy.

Finally, the only other statement in the underlying complaint to which Flynn points, and the only other statement that we have found that seems potentially relevant to Flynn's assertion of the potential for coverage, is the following sentence, also in paragraph 14: "As a further proximate and legal result of the negligence of FLYNN, OAKHURST BUILDERS will incur and/or has incurred *costs to investigate and repair the Real Property, and has incurred loss of use of the Real Property* in an amount to be proven at trial." (Italics added.) Flynn contends that United Contractors has not "even attempted to prove that the damage alleged in" this portion of paragraph 14, "which damage was alleged to have been negligently caused by Mr. Flynn, and which damage allegedly (a) necessitated the repair of the Real Property, and (b) caused the loss of use of the Real Property, was not the physical injury to tangible property and/or loss of use of that injured property." However, in making this argument, Flynn fails to acknowledge that the repair and loss of use must be due to physically injured property that is *not* Flynn's work in order to be covered by the Policy. There is no suggestion in the complaint, nor any basis on which an inference may be drawn, that the "repair" of the "Real Property" and the "loss of use of the Real Property" is a result of physical injury to parts of the property that are not either Flynn's work or surrounding undamaged work that had to be demolished in order to repair and replace Flynn's work. The entire paragraph refers to the repair and replacement of the glass and glazing work, specifically, and mentions the demolition of the surrounding areas in order to repair and replace Flynn's

19

work.  One cannot reasonably infer from the final sentence of paragraph 14 that Oakhurst Builders is seeking damages for repairing physically injured property that was not Flynn's work, apart from any portions that had to be demolished in order to repair his work. Rather, the entire complaint is seeking relief for Flynn's alleged breach of contract and the cost of repairing and/or replacing his allegedly defective work.  None of the claims asserted has a potential for policy coverage.

Because we conclude that none of the facts stated or fairly inferable in the complaint suggest a claim potentially covered by the policy, and because there has been no showing that United Contractors knew or discovered other facts that would suggest potential coverage, United Contractors's duty to defend did not arise.  Although the trial court reached the same conclusion based on its finding that an exclusion to coverage in the Policy for so-called "ongoing operations" provided in exclusion "j" excluded the claims in the underlying complaint from coverage, we need not address that contention because we are affirming the trial court's judgment on different grounds that the parties have already addressed on appeal.  (See Code Civ. Proc., § 437c, subd. (m)(2).)

## IV.

## DISPOSITION

The judgment of the trial court is affirmed.

_____

AARON, J.

WE CONCUR:

_____

NARES, Acting P. J.

_____

IRION, J.